1  Matthew Mellen (SBN: 233350)
   Sarah Adelaars (SBN: 281748)
2  Eunji Cho (SBN: 286710)
   MELLEN LAW FIRM
3  411 Borel Ave, Suite 230
   San Mateo, California 94402
4  Telephone:     (650) 638-0120
   Facsimile:     (650) 638-0125
5  mellenlaw@yahoo.com

6  Attorneys for Plaintiff
   RACHEL FEVINGER
7

8              UNITED STATES DISTRICT COURT

9     NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

10  RACHEL FEVINGER, an individual          CASE NO.: 5:13-cv-04839-PSG

11          Plaintiff,                      **PLAINTIFF'S OPPOSITION TO
                                            DEFENDANTS' MOTION TO DISMISS
12      v.                                  PLAINTIFF'S FIRST AMENDED
                                            COMPLAINT**
13  BANK OF AMERICA, a national association;
    US BANK, N.A. as Trustee for Wamu Mortgage  Date:    February 25, 2014
14  Pass-Through Certificates, Series WMALT   Time:    10:00 a.m.
    2006-AR1; and Does 1 through 100, inclusive Ctrm:    Courtroom 5
15
            Defendants.                      Action Filed:   October 18, 2013
16                                           FAC Filed:     December 3, 2013
17                                           Magistrate Judge Paul S. Grewal
18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTES**

2    INTRODUCTION…………………………………………………………………..…...…..1

3    I.      FACTUAL BACKGROUND…………………………………………………..…...1

4

5    II.     LEGAL ARGUMENT……………………………………………………………4

6            A.     Legal Standard…………………………………………………...............4

7            B.     Plaintiff Has Sufficiently Pleaded Her Fraud Based Claim………………5

8                   1.     Plaintiff's Fraud Based Claims are Sufficiently Pleaded…………..6

9                   2.     BANA's Misrepresentations Are Actionable Fraud………………7

10

11                  3.     Plaintiff Has Sufficiently Alleged Reasonable Reliance and
                          Damages…………………………………………………………8

12
13           C.     Plaintiff Has Sufficiently Pleaded a Causes of Action for Negligent
                    Misrepresentation………………………………………………...…..10

14
15           D.     Plaintiff Has Sufficiently Pleaded a Cause of Action for Violation of Cal.
                    Civil Code § 2924, *et seq*…………………………………...……………12

16
17                  1.     Plaintiff Has Standing to Bring a Cause of Action for Violation of
                          Cal. Civil Code § 2924, *et seq*……………………………….....12

18
19                  2.     Tender is Not a Doctrine of Standing to Challenge a Pre-Sale
                          Foreclosure……………………………………………….……13

20
21                  3.     Plaintiff Has Sufficiently Pleaded a Claim for Violation of Section
                          2924………………………………………………………….14

22
23                  4.     Plaintiff Has Sufficiently Pleaded a Claim for Violation of Section
                          2924(c)…………………………………………………...…..15

24
25           E.     Plaintiff Has Sufficiently Pleaded a Cause of Action for Breach of
                    Contract………………………………………………………..……16

26
27           F.     Plaintiff Has Sufficiently Pleaded A Cause Of Action For Breach of the
                    Covenant of Good Faith and Fair Dealing………………………………17

28

i

G.      Plaintiff Has Sufficiently Pleaded An Unfair Competition Claim……..…18

1.      Plaintiff Has Standing to Bring a UCL Claim ……………….....18

2.      Plaintiff Sufficiently Pleaded an Underlying Claim……………...19

III.     CONCLUSION……………………………………………………………………19

ii

**Cases**

Anderson v. Heart Fed. Sav. & Loan Ass'n,
208 Cal. App. 3d 202, 215 (1989)………………………………………………………………9

Ashcroft v. Iqbal,
129 S.Ct. 1937, 1949 (2009)……………………………………………………………….4

Balistreri v. Pacific Police Department,
901 F.2d 696, 699 (9th Cir. 1990)………………………………………………………….4

Bank of America Nat'l Trust & Sav. Asso. v. Hutchinson
(1963) 212 Cal. App. 2d 142, 148……………………………………………...…..…17

Bell Atlantic Corp. v. Twombly,
550 US 544 (2007)………………………………………………………………....4, 7

Chang v. Chen,
80 F.3d 1293, 1296 (9th Cir.1996)………………………………………………………….4

Charpentier v. L.A. Rams Football Co.,
75 Cal.App.4th 301, 312 (1999)…………………………………………………………16

City Solutions, Inc.,
365 F.3d at 841…………………………………………………………………..15

Committee on Children's Television, Inc. v. General Foods Corp.,
35 Cal.3d 197, 217 (1983)…………………………………………………………15

Conley v. Gibson,
355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)……………………………………….4, 5

Davis v. U.S. Bancorp,
383 F.3d 761 (2004)……………………………………………………………..9

Foley v. Interactive Data Corp.,
47 Cal.3d 654, 683-684 (1988))………………………………………………………12

Foman v. Davis,
371 U.S. 178, 182 (1962)………………………………………………………….4

Hafiz v. Greenpoint Mortgage Funding, Inc.,
652 F.Supp.2d 1039, 1045 (2009)…………………………………………………11

Harris v. Wells Fargo Bank, N.A.,
No. 3:12-cv-05629-JST, 2013 LEXIS 61847, at * 25 (N.D. Cal. April 30, 2013)…………….13

Harvey v. Bank of Am., N.A.,
No. 12-cv-3238-SC, 2013 WL 632088, at *2–3 (N.D. Cal. Feb. 20, 2013)........................13

Hauk v. JP Morgan Chase Bank USA,
552 F.3d 1114, 1122 (9th Cir. 2009)..................................................................18

Heimann v. National Elecator Industry Pension Fund,
187 F.3d 493, 509 (5th Cir. 1999)....................................................................16

Hunt v. Washington State Apple Advertising Comm'n,
(1977) 432 US 333, 347-348............................................................................19

Kasky v. Nike, Inc.,
27 Cal. 4th 939, 949 (2002))............................................................................18

Laks v. Coast Federal Saving & Loan Association,
60 Cal.App.3d 885, 890 (1976)........................................................................13

Pareto v. F.D.I.C.,
139 F.3d 696, 699 (9th Cir. 1998)......................................................................4

Pashley v. Pacific Electric RR,
(1944) 25 Cal. 2d 226, 235..............................................................................17

Roussel v. Wells Fargo Bank,
12-cv-04057-CRB, 2013 WL 146370, at *6 (N.D. Cal. Jan. 14, 2013..........................17

Schneider v. California DOC,
151 F.3d 1194, 1196 (9th Cir. 1998)...................................................................5

Secrest v. Security National Mortgage Loan Trust 2002-2,
167 Cal.App.4th 544, 555 (2008)..................................................................14, 16

Sprewell v. Golden State Warriors,
266 F.3d 979, 988 (9th Cir. 2001)......................................................................4

State of Missouri ex rel Pemiscot County, Mo. V. Western Sur. Co.
(8th Cir. 1995) 51 F.3d 170, 173.......................................................................19

Susilo v. Wells Fargo Bank, N.A.,
796 F. Supp. 2d 1177, 1188 (U.S. Dist., 2011).......................................................9

Tanner v. Title Ins. & Trust Co.
20 Cal.2d 184 (1942)....................................................................................12

Tarmann v. State Farm Mut. Auto Ins. Co.,
2 Cal.App.4th 153, 157 (1991).........................................................................15

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Thomson v. International Alliance of Theatrical Stage Employees and Moving Picture
Machine Operators of the United States and Canada,
        232 Cal.App. 446, 454(1965))…………………………………………………………..13

**Statutes**

15 U.S.C. §1691(d)……………………………………………………………….9, 10

28 U.S.C. section 1332…………………………………………………..………19

Fed. R. Civ. P. 9(b)…………………………………………………………….16

Fed. R. Civ. P. 12(b)(6)…………………………………………………………Generally

Cal. Civ. Code § 1511……………………………………………………...…10

Cal. Civ. Code § 2923.6…………………………………………………….6-8, 18

Cal. Civ. Code § 2924…………………………………………………….6, 8, 9, 18

California Bus. & Prof. Code § 17200………………………………………….17, 18

**INTRODUCTION**

In the case at hand, Plaintiff was tricked into a negatively amortizing loan that she did not understand.  Later, when her payments began to increase she approached Bank of America, the servicer of her loan on behalf of the beneficiary, US BANK, for a loan modification and was led on a wild goose chase that lasted until the present.  Although Plaintiff was at all times ready willing and able to make her regular mortgage payment, she was maneuvered into foreclosure by numerous misrepresentations.  In fact, Plaintiff has records of interactions with over 30 different Bank of America representatives throughout this ordeal.  Despite the fact that numerous bank employees promised Plaintiff she would not be foreclosed on while awaiting a loan modification, Plaintiff now faces an insurmountable amount of arrears, destruction of her credit, and the imminent loss of her property.

Defendants' Motion to Dismiss is a misguided attempt to thwart the Court's attention away from the true allegations of Plaintiff's lawsuit.  In its Motion to Dismiss, Defendants attempt to distract the court from the true facts of this case – Defendants' systematic practice of engaging in deceitful business practices.  <u>See</u> Motion to Dismiss generally.  Defendants wholly fail to acknowledge their involvement in engineering Plaintiff's alleged default.  As detailed below, Defendants' conduct has given rise to Plaintiff's several causes of action against Defendants, and accordingly, Defendants' Motion to Dismiss should be denied.

**I.       FACTUAL BACKGROUND**

In 2005, Plaintiff purchased the property located at 3583/3585 Mauricia Avenue, Santa Clara, CA 95051 (hereinafter "the Property").  FAC at ¶ 10.  To secure the financing, Plaintiff executed a Deed of Trust and promissory note in favor of American Mortgage Express Corp.  <u>Id</u>.  All beneficial interest under the Deed of Trust was subsequently transferred to Defendant US BANK, N.A. (hereinafter "US BANK"), with Defendant BANK OF AMERICA, N.A. (hereinafter "BANA") acting as the servicer of the loan.  <u>Id</u>.

From 2005 to 2009, Plaintiff made each and every payment under the note.  FAC at ¶ 12.  However, by 2009, Plaintiff started to notice that her payment was increasing, which made it increasingly difficult to make her monthly loan payments.  <u>Id</u>.  At, or around this same time,

1   Plaintiff received correspondence from BANA offering to consider her for a loan modification.

2   Id.  In August of 2010, Plaintiff called the number on the correspondence and spoke with a

3   BANA representative Selena.  FAC at ¶ 13.  Selena informed Plaintiff that she was a good

4   candidate for a loan modification and instructed her to complete a loan modification application.

5   Id.  Plaintiff, who had missed a few payments in the past, but was financially ready to resume

6   making payments and reinstate her loan, told Selena that she was interested in reinstating her

7   loan.  Id.  However, Selena advised Plaintiff not to do so and instead told Plaintiff to await a loan

8   modification, because she was such a good candidate for a modification.  Id.

9          On or around August 30, 2010, Plaintiff completed and submitted a loan modification

10   application.  FAC at ¶ 14.  Not hearing back from BANA after a few weeks, Plaintiff called

11   contacted BANA in September 2010.  FAC at ¶ 15.  Plaintiff spoke to a man who identified

12   himself as Selena's co-worker, and inquired about the modification.  Id.  In response to Plaintiff's

13   concern over the growing arrearage, the BANA representative told Plaintiff that it was the

14   lender's, Defendant US BANK'S, policy not to foreclose on borrowers who had submitted

15   complete loan modification applications and were awaiting a decision.  Id.  He also informed

16   Plaintiff that, if she did not hear back on her application, to call BANA again in a few weeks.  Id.

17   After a few weeks of not receiving any news or help from BANA representatives, Plaintiff sent

18   BANA a written correspondence demanding that BANA respond to her repeated inquiries in

19   October 2010.  FAC at ¶ 16.  Finally, in November 2010, Plaintiff received a letter from BANA

20   stating that BANA was still reviewing the documentation provided and would provide a more

21   complete response within twenty days.  FAC at ¶ 17.  Not having heard back in twenty day

22   period, Plaintiff again called to follow up but this time did not reach anyone at the former number

23   who knew Selena, or had any knowledge of the loan modification at all.   FAC at ¶ 18.  Plaintiff

24   was instructed to apply again and told to await a new application from BANA.  Id.

25          Plaintiff was nervous about her growing arrears and asked for a reinstatement calculation

26   at that time, in December 2010, but was informed by the phone representative, whose name is

27   easily ascertainable through discovery, that she should await her application materials instead of

28   reinstating her loan.  FAC at ¶ 19.  This representative, again, reiterated the promise that Plaintiff

would not be foreclosed on while she was awaiting the loan modification and, therefore, she need not worry about reinstating her loan.  Id.  Thus, Plaintiff awaited a new loan modification application, which finally arrived in February 2011.  Id.  Upon receipt of the new loan modification application, Plaintiff immediately submitted all requested documentation.  FAC at ¶ 20.  In March or April 2011, Plaintiff was finally informed that her application was under review, however, on April 4, 2011, BANA representative, who identified herself as Nissa, informed Plaintiff that several of the pages of her modification application were missing.  FAC at ¶20-21.  Although Plaintiff faxed the "missing" pages immediately, she was repeatedly told that the fax was not received and therefore, she sent in the purportedly missing pages again on May 2, 2011 and May 3, 2011.  FAC at ¶ 21.  Finally, on May 6, 2011, Nissa acknowledged receipt of the fax.  Id.

On May 13, 2011, Plaintiff called to follow up and spoke to a representative named Ahmed.  FAC at ¶ 22.  Ahmed told Plaintiff that her documents were still under review by the negotiator and that she needed to keep waiting.  Id.  Plaintiff was still ready willing and able to catch up with her mortgage payment and expressed concern that so much time was passing as it had been almost a year since she was told to refrain from making a payment.  Id.  Ahmed told her not to worry – that it was BANA's policy not to foreclose on borrowers who were in loan modification review.  Id.  Ahmed also said that if she caught up on her payments she would not get a loan modification.  Id.

From July to September 2011, Plaintiff frequently contacted BANA to follow up on her application, however, each time she was transferred to a new individual that could not give her an update on her application or asked her to resubmit documents which were already submitted.  FAC at ¶ 23 – 29.  On August 9, 2011, BANA left a message on Plaintiff's voice mail and instructed her to call 866-459-5285 and type in code number 320126.  FAC at ¶ 26.  When Plaintiff followed these instructions, the message said that BANA "needed no new documents at this time."  Id.  On October 1, 2011 and again on October 5, 2011, Plaintiff received confusing letters from BANA, informing her that it could not process her loan modification application because she had not provided all the required paperwork.  FAC at ¶ 30-31.  However, when

3

Plaintiff called BANA, different representatives assured Plaintiff that the letters were in error and that her application was complete and still under review.  Id.  To Plaintiff's shock, Plaintiff received a HAMP denial letter in November 2011, claiming that because she had not sent in all the required materials, she could not be considered for a HAMP modification.  FAC at ¶ 32.

Plaintiff immediately contacted BANA and spoke with a BANA representative Markus. Id.  Plaintiff informed Markus about the numerous mixed messages regarding the completeness of the application and he apologized, but stated that the best way to rectify the situation was simply to start over with a new application.  FAC at ¶ 33.  Plaintiff was terrified by this time and realized she was very much at the mercy of the bank because of the mounting arrears, late fees and attorney's fees, but had no choice at this point other than to pursue the modification.  Id.  From the beginning of 2012 until September 6, 2012, Plaintiff was forced to jump through hoops as she had been since the start.  FAC at p. 8, ¶ 25.  After Markus himself disappeared, a woman named Elizabeth Hokama became Plaintiff's point of contact.  Id.  After Elizabeth disappeared, a woman named Theresa Llort was appointed as the point of contact.  Id.  After Theresa Llort disappeared Jennifer Ovando popped up.  After Jennifer Ovando disappeared, Henry Lau was appointed.  Id. In September 2012, to Plaintiff's dismay, she received a Notice of Default, even though she had been repeatedly told by BANA that her loan would not be placed in default while her loan modification application was pending.  FAC at p. 8, ¶ 26.  Further, the Notice of Default contained an inaccurate calculation of Plaintiff's arrears.  Id.  Shortly after this notice of default, Plaintiff received a denial letter informing her that the reason she was being denied for a loan modification was that her arrears had grown to be too large.  Id.

## II.    LEGAL ARGUMENT

### A.    Legal Standard

The courts have long held a strong policy in favor of determining disputes on the basis of their merits and not on technicalities of pleading rules.  Foman v. Davis, 371 U.S. 178, 182 (1962).  As such, dismissal is reserved for such cases where it is clear that a cause of action cannot be saved by any amendment.  Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir.1996).

1    In considering a motion pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept as true

2   all material allegations in the complaint, as well as all reasonable inferences to be drawn from

3   them. Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998).  The complaint must be read in the

4   light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979,

5   988 (9th Cir. 2001).  To survive a motion to dismiss, a plaintiff need only plead facts sufficient to

6   "state a claim for relief that is plausible on its fact." Bell Atlantic Corporation v. Twombly, 550

7   U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content

8   that allows the court to draw the reasonable inference that the defendant is liable for the

9   misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).

10    A dismissal is only appropriate where the plaintiff fails to state a claim supportable by any

11   cognizable legal theory.  Balistreri v. Pacific Police Department, 901 F.2d 696, 699 (9th Cir.

12   1990).  A complaint need only contain "a short and plain statement of the claim that will give the

13   defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.  Conley

14   v. Gibson, 355 U.S. 41, 47 (1957) (abrogated on other grounds by Bell Atlantic Corporation v.

15   Twombly, 550 U.S. at 563 (2007)).  For these reasons, dismissal without leave to amend is

16   improper unless it is clear that a complaint could not be saved by any amendment.  Schneider v.

17   California DOC, 151 F.3d 1194, 1196 (9th Cir. 1998).

18    In this case, Plaintiff pleaded sufficient facts to allege the nature and extent of the

19   wrongful conduct committed by Defendants.  These factual allegations are thereafter incorporated

20   by reference into each applicable Cause of Action.  Each Cause of Action identifies its particular

21   elements and the allegations made against Defendant.  As such, Plaintiff has sufficiently pleaded

22   allegations to place Defendant on notice of the claims against them and the grounds upon which

23   those claims rest.  Because of this, the motion to dismiss should be denied or, alternatively,

24   Plaintiff should be granted leave to amend.

25    **B.    Plaintiff Has Sufficiently Pleaded Her Fraud Based Claim.**

26    Defendant BANA incorrectly moves to dismiss Plaintiff's fraud based claim on three

27   erroneous grounds.  First, Defendant argues that Plaintiff fails to meet the heightened pleading

28   standard associated with fraud claims.  MTD at p. 5, ln. 5-6.  Second, Defendant claims that

1   Plaintiff's allegations do no amount to actionable fraud.  MTD at p. 5, ln. 12-13.  Lastly,

2   Defendant argues that Plaintiff fails to allege justifiable reliance and damages as a result of

3   BANA's conduct.  MTD at p. 6, ln. 7-8.  For the reasons stated herein, each of Defendant's

4   arguments fail.

5          **1.    Plaintiff's Fraud Based Claims are Sufficiently Pleaded.**

6          Defendant BANA first argues that Plaintiff has failed to meet the particularity requirement

7   under Rule 9(b).  MTD at p. 5, ln. 5-6.  Contrary to Defendant's argument, however, Plaintiff has

8   clearly pleaded the misrepresentations of which she complains, i.e. that her Property would not be

9   foreclosed on while she was awaiting a loan modification review.  FAC at ¶ 15, 19, 22, and 69.

10  Generally, where a plaintiff asserts a cause of action for fraud against a corporation, the plaintiff

11  must also allege, "the names of the persons who made the allegedly fraudulent representations,

12  their authority to speak, to whom they spoke, what they said or wrote, and when it was said or

13  written."  Tarmann v. State Farm Mut. Auto Ins. Co., 2 Cal.App.4th 153, 157 (1991).  However,

14  "less specificity is required when it appears from the nature of the allegations that the defendant

15  must necessarily possess full information concerning the facts of the controversy."  Committee on

16  Children's Television, Inc. v. General Foods Corp., 35 Cal.3d 197, 217 (1983).  Pleadings

17  alleging fraud may withstand a motion to dismiss where the Court believes that elimination of

18  confusion as to exactly who made what representations, and by what means, could be reserved for

19  the discovery stage.  Charpentier v. L.A. Rams Football Co., 75 Cal.App.4th 301, 312 (1999).  In

20  the present case, Plaintiff has clearly alleged that in September 2010, a BANA representative,

21  who identified himself as Selena's co-worker, made the misrepresentation that it was Defendant

22  US BANK's policy not to foreclose on borrowers who had submitted a complete loan

23  modification application and were awaiting a decision.  FAC at ¶ 15.  Then in December 2010,

24  another BANA representative reiterated the promise that Plaintiff would not be foreclosed on

25  while she was awaiting the loan modification.  FAC at ¶ 19.  Although Plaintiff is currently

26  unable to recall the names of the Wells Fargo representatives who made the representations and

27  the exact date of the representations, Defendant necessarily possesses full information and any

28  confusion would be discovered through servicing notes during the discovery stage.  Plaintiff has

1   certainly pleaded with specificity the actual misrepresentations made and, "a little discovery

2   should clear up" the other element.  <u>Charpentier</u> at 312.  Further, Plaintiff has clearly alleged that

3   on May 13, 2011, BANA representative Ahmed again told Plaintiff not to worry about

4   foreclosure since it was BANA's policy not to foreclose on borrowers who were in loan

5   modification review.  FAC at ¶ 22.  Therefore, Plaintiff has clearly pleaded her fraud claim with

6   specificity with name of the BANA representative, Ahmed, and what was said by Ahmed on May

7   13, 2011.  However, should the Court deem this insufficient, Plaintiff respectfully requests leave

8   to amend.

9                    **2.   BANA's Misrepresentations Are Actionable Fraud.**

10          Defendant BANA next erroneously argues that the misrepresentations are not actionable

11   fraud because foreclosure has not occurred, BANA does not owe Plaintiff any duty, and the

12   alleged promise is nothing more than an opinion about a future event.  MTD at p. 5, ln. 23-28.

13          First and foremost, Defendant argues that Plaintiff does not allege a misrepresentation

14   because foreclosure has not occurred.  MTD at p. 6, ln. 1-2.  In addition, Defendant argues that

15   Plaintiff concedes she was denied a loan modification in November 2011 and the Notice of

16   Default was not recorded until September 2012.  MTD at p. 6, ln. 2-4.  Although a trustee's sale

17   not yet taken place, Defendants initiated foreclosure proceedings by recording a Notice of Default

18   and numerous Notices of Trustee's Sale.  Defendants' RJN Ex. E – I.  More importantly,

19   Defendant conveniently ignores facts in Plaintiff's FAC.  Although the November 2011 letter

20   stated that Plaintiff could not be considered for a HAMP modification because she had not sent in

21   all the required materials, she had in fact repeatedly sent in the required materials.  FAC at ¶ 32.

22   When she contacted BANA to discuss this error, BANA representative Markus apologized and

23   instructed Plaintiff to submit a new modification application to rectify the situation.  FAC at ¶ 33.

24   Therefore, when Defendants caused to be recorded a Notice of Default in September 2012,

25   Plaintiff had a completed loan modification application pending.  FAC at p. 8, ¶ 26.

26          Defendant's next argument that BANA never exceeded its conventional role as mere

27   lender of money and therefore it never owed Plaintiff any duty is confusing at best.  MTD at p. 5,

28   ln. 25-26.  The primary reason this argument is confusing is because a legal duty is not a

requirement in pleading a cause of action for fraud. Rather, Plaintiff merely must plead (1) a misrepresentation or concealment of a material fact; (2) knowledge of falsity or lack of reasonable ground for belief in the truth of the representation; (3) intent to induce reliance; (4) actual and justifiable reliance by Plaintiff; and (5) resulting damage. OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp. (2007) 157 Cal.App.4th 835. Plaintiff is not alleging fraud through nondisclosure or concealment of facts, but fraud through false representation. As such, Plaintiff is not required to establish Defendant's legal duty to disclose facts.

Defendant's last argument that the alleged promise is nothing more than an opinion about a future event is equally unavailing. MTD at p. 5, ln. 26-28. Plaintiff has alleged misrepresentations of existing fact, i.e. that in September 2010 BANA representative told Plaintiff that it was Defendant US BANK's policy not to foreclose on borrowers who had submitted a complete loan modification application. FAC at ¶ 15. Additionally, on May 13, 2011, BANA representative Ahmed again told Plaintiff not to worry about foreclosure since it was BANA's policy not to foreclose on borrowers who were in loan modification review. FAC at ¶ 22. These misrepresentations about the existence of policies are actionable as they are misrepresentations about existing material facts. Therefore, Defendant's argument fails. However, should the Court deem this insufficient, Plaintiff respectfully requests leave to amend.

**3.     Plaintiff Has Sufficiently Alleged Reasonable Reliance and Damages.**

Defendant lastly erroneously moves to dismiss Plaintiff's fraud based claim on the ground that Plaintiff has not alleged justifiable reliance and damages as a result of BANA's actions. MTD at p. 6, ln. 7-8.

First, Plaintiff has sufficiently alleged reasonable reliance. Plaintiff pleaded that in reliance on Defendant's statements, Plaintiff did not reinstate her loan, which she was, at all time, ready, willing, and ale to do so, as a result of Defendant's statements regarding their policies on how to treat accounts that were being reviewed for a loan modification. FAC at ¶ 69. Each time Plaintiff expressed concern for the growing arrears and asked about reinstating her loan, BANA representatives told Plaintiff not to do so. FAC at ¶ 13, 19, and 22. In fact, BANA representative

1  Ahmed even told Plaintiff that if she caught up on her payments, she would not get a loan

2  modification.  FAC at ¶ 22.  Plaintiff's reliance was reasonable as Defendant was the holder of

3  Plaintiff's loan and ostensibly possessed the requisite authority to forego foreclosure activities

4  while modifying Plaintiff's loan.  FAC at ¶ 71.  Defendant falsely states that although Plaintiff

5  alleges that BANA "refused" to provide Plaintiff with a reinstatement figure, Plaintiff concedes

6  that she was given a reinstatement quote.  MTD at p. 6, ln. 14-17.  Defendant misconstrues

7  Plaintiff's allegations.  Plaintiff's allegation is that starting in September 2010, Plaintiff

8  repeatedly expressed interest in reinstating her loan, BANA representatives instructed Plaintiff

9  not to do so.  FAC at ¶ 13, 19, and 22.  Defendant ignores the part of the allegations where

10  Plaintiff alleges that Defendants continued to provide Plaintiffs with an inaccurate reinstatement

11  quote, **or no reinstatement quote at all**."  FAC at ¶ 80 (emphasis added).   The only

12  reinstatement figure that was provided to Plaintiff was the inaccurate amount of arrears in the

13  Notice of Default.  FAC at p. 8, ¶ 26.

14       Contrary to Defendant's argument, the Statute of Frauds does not prevent Plaintiff's claim

15  for this cause of action.  MTD at p. 6, footnote 5.  While it is generally recognized that a

16  mortgage or deed of trust comes within the statute of frauds, it is inapplicable to the case at hand.

17  Secreset v. Security Nat'l Mortg. Loan Trust 2002-2, 167 Cal.App.4th 544, 552.  Plaintiff's claim

18  rests on the argument that Defendant repeatedly promised that Plaintiff would not face

19  foreclosure proceedings while Plaintiff was pursuing a loan modification.  FAC at ¶ 13, 19, 22,

20  and 69.  In fact, contained in the Deed of Trust is an explicit provision giving Defendants the

21  authority to do just that, not initiate foreclosure proceedings.  Pursuant to the Deed of Trust at

22  Section 9 (Protection of Lender's Interest in the Property and Rights Under this Security

23  Instrument), "Although Lender may take action under this Section 9, Lender does not have to do

24  so and is not under any duty or obligation to do so."   Defendants' RJN, Ex. A.  Therefore, the

25  possibility of a postponement was included in the contract, and does not constitute an oral

26  modification of the contract.  Because the promise was not an oral modification of the Deed of

27  Trust but instead was included in the express terms of the Deed of Trust, it is not subject to the

28  statute of frauds.

Lastly, Defendant argues that Plaintiff has not alleged actual damages as all foreclosure proceedings are a direct result of Plaintiff's inability to make her mortgage payments and inability to cure the default.  MTD at p. 7, ln. 4-7.  Defendant conveniently ignores all misconduct on the part of BANA.  Although Plaintiff had missed a few payments in the past, Plaintiff was financially ready to resume making payments and reinstate her loan in August 2010.  FAC at ¶ 13.  Plaintiff clearly alleged that she informed BANA representative, Selena, of the change in finances and expressed her interest in reinstating the loan, however, Selena advised Plaintiff not to do so and told Plaintiff to await a loan modification.  Id.  Subsequently, each time Plaintiff expressed interest in reinstating her loan, different BANA representatives instructed Plaintiff not to do so.  FAC at ¶ 13, 19, and 22.  But for BANA promises to not foreclose on her property, Plaintiff would have reinstated her loan.  FAC at ¶ 72.  Therefore, contrary to Defendant's argument, Plaintiff has sufficiently alleged resulting damages from the misrepresentations and Defendant's motion as to Plaintiff's fraud based claim must be overruled.  FAC at ¶ 73-74. However, should the Court deem this insufficient, Plaintiff respectfully requests leave to amend.

### C.   Plaintiff Has Sufficiently Pleaded a Causes of Action for Negligent Misrepresentation.

Defendant BANA moves to dismiss this cause of action on the ground that Defendant owes no duty of care to Plaintiff.  However, where one undertakes to speak on a matter, they have a duty to state truly what he tells and a duty not to suppress or conceal "any facts within his knowledge which will materially qualify those stated."  Pashley v. Pacific Electric RR. (1944) 25 Cal. 2d 226, 235; Bank of America Nat'l Trust & Sav. Asso. v. Hutchinson (1963) 212 Cal. App. 2d 142, 148.  Therefore, Defendant owed Plaintiff a duty not to conceal pertinent facts and Defendant breached that duty by concealing the truth, that Defendant would initiate foreclosure proceedings on Plaintiff's property.  FAC at ¶ 59.  Further, whether a lender owes a borrower a duty of care is a balancing test which includes "[1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection  between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6]

the policy of preventing future harm."  Roussel v. Wells Fargo Bank, 12-cv-04057-CRB, 2013

WL 146370, at *6 (N.D. Cal. Jan. 14, 2013).   In the present case, there is a duty of care because:

(1) loan modification is clearly intended to affect Plaintiff, as the determination on the

modification would determine whether or not Plaintiff kept her home, as would an explanation of

the effects of applying for a modification;  (2) the potential harm to Plaintiff from

misrepresentations surrounding the modification, specifically, telling Plaintiff to withhold

payments, is certainly foreseeable; (3) the injury to Plaintiff for misrepresentations of this sort is

certain, as missed payments would affect her loan status and place her in default;  and (4) public

policy dictates the correct handling of borrowers' accounts.  Further, when Defendant made

promises to Plaintiff regarding the treatment of her account, and induced detrimental reliance on

these promises, Defendant created a duty of care in fulfilling these promises.

Defendant erroneously argues that as Plaintiff alleges no facts suggesting a likelihood that

BANA would have approved her loan modification and Plaintiff cannot argue that it was

foreseeable that she would be harmed.  MTD at p. 9, ln. 6-10.  Contrary to Defendant's argument,

Plaintiff alleged that in September 2010, Plaintiff informed BANA representative Selena that she

was interested in restating her loan, but Selena advised Plaintiff against it and instead told

Plaintiff to await a loan modification, because she was such a good candidate for a modification.

FAC at ¶ 13.  In fact, BANA representatives repeatedly told Plaintiff to not reinstate her loan and

wait for the loan modification.  FAC at ¶ 19, 22.  Therefore, instructions by BANA to not

reinstate Plaintiff's loan has clear effect on Plaintiff and the harm from not reinstating the loan

was clearly foreseeable. Contrary to Defendant's argument that Plaintiff cannot allege the "close

connection" between BANA's conduct and Plaintiff's injury, it is clear that BANA's instructions

to not reinstate the loan along with the misrepresentation that BANA would not foreclose on

Plaintiff's property directly led to actual damages to Plaintiff.  MTD, p. 9, ln. 11-12.  Further,

Defendant argues that imposing a legal duty on lenders could serve as a disincentive to lenders

from offering foreclosure options in the first place.  MTD, p. 9, ln. 15-18.  In the case at hand, had

Defendant refused to offer a loan modification in the first place and allowed Plaintiff to reinstate

her loan as she expressed interest in September 2010, Plaintiff would not be facing imminent

foreclosure with late fees which were caused by Defendant's misconduct. For these reasons, Defendant's argument fails. However, should the Court deem this insufficient, Plaintiff respectfully requests leave to amend.

### D. Plaintiff Has Sufficiently Pleaded a Cause of Action for Violation of Cal. Civil Code § 2924, *et seq.*

Plaintiff has sufficiently pleaded Defendant's various violations of Cal. Civil Code § 2924 *et seq.* Specifically, Plaintiff alleges that the Notice of Default is inflated with fees and payments that Defendants waived by virtue of Civil Code § 1511 and as such, the nature of the breach is not known to beneficiary in violation of Cal. Civil Code § 2924a(a)(C), and Defendants interfered with Plaintiff's right to reinstate under Cal. Civil Code § 2924c. FAC at ¶ 78-80. Defendants erroneously move to dismiss Plaintiff's cause of action for wrongful foreclosure on four grounds.

First, Defendants argue that Plaintiff lacks standing to challenge the foreclosure. MTD at p. 10, ln. 11-12. Second, Defendants base its motion to dismiss the claim on Plaintiff's failure to allege tender. MTD at p. 11, ln. 5. Third, Defendants argue that Plaintiff's contention that Defendants violated Section 2924 is contradicted by publicly recorded documents. MTD at p. 11, ln. 7. Lastly, Defendants argue that Plaintiff has failed to allege a violation of Section 2924(c). MTD p. 13, ln. 2-5. For the reasons stated below, Defendant's Motion to Dismiss as to this cause of action should be overruled or, in the alternative, Plaintiffs should be granted leave to amend.

### 1. Plaintiff Has Standing to Bring a Cause of Action for Violation of Cal. Civil Code § 2924, *et seq.*

Defendants erroneously move to dismiss Plaintiff's cause of action for wrongful foreclosure by alleging that Plaintiff lacks standing to challenge Defendants' authority to initiate foreclosure proceedings. MTD at p. 10, ln. 11-12. However, Plaintiff's claim relies on inaccuracies contained in the Notice of Default, not inaccuracies in a Trustee's Sale and therefore a completed Trustee's Sale is not a prerequisite to bringing Plaintiff's claim. The case cited by Defendant to supports its position is not binding or persuasive to this Court, and is inapposite to the case at hand because Plaintiff is not challenging Defendants' standing to perform non-judicial foreclosure. It is well settled that, prior to a completed sale, a borrower may not bring a cause of action to determine whether the person initiating the non-judicial foreclosure is authorized to do

1    so.  <u>Gomes v. Countrywide Home Loans, Inc.</u> (2011, 4th Dist.) 192 Cal.App.4[th] 1149.  However,

2    claims may be brought against a lender, prior to a foreclosure sale, if Defendant fails to comply

3    with the notice requirements under Cal. Civil Code § 2924.  <u>Shahani v. United Commer. Bank</u>,

4    (ND Cal. 2011) 2011 US Dist LEXIS 106433; <u>U.S. Hertz, Imc. V. Niobrara Farms</u>, (1974) 41

5    Cal.App.3d 68.  A holding that a completed sale is necessary to attack the procedural

6    requirements under the Civil Code would eviscerate all procedural requirements of the statute and

7    would allow the lender to bypass of procedural requirements.

8              2.      **Tender is Not a Doctrine of Standing to Challenge a Pre-Sale Foreclosure.**

9         Defendants next allege that as Plaintiff has failed to allege tender, her claim for violation

10    of Section 2924 fails.  MTD at p. 11, ln. 5.  There is a vast misunderstanding, or an intentional

11    misunderstanding, by defense counsel regarding the tender doctrine.  Tender is not, as some say,

12    implicated in every foreclosure related cause of action.  Consider, for instance, Civil Code

13    §2923.5.  This cause of action allows a plaintiff to attack a Notice of Default and have it

14    rescinded due to a bank's failure to comply with its pre-foreclosure requirements.  <u>Mabry v.</u>

15    <u>Superior Court</u> (2010) 185 Cal.App.4th 208.  Clearly, tender was not required by the <u>Mabry</u>

16    Court.

17         Tender is a doctrine of equity applicable only to equitable causes of action.  Courts have

18    held that in order to unwind a completed foreclosure sale, one must do equity in order to receive

19    equity.  <u>Karlsen v Am.Sav. & Loan Ass'n</u>, (1971) 15 Cal.App.3d 112, 121.  The rationale for the

20    tender requirement is that "if plaintiffs could not have redeemed the property had the sale

21    procedures been proper, any irregularities in the sale did not result in damages to plaintiffs."

22    <u>FCPI Re-Hab 01 v. E & G Invs.</u> (1989) 207 Cal.App.3d 1018, 1022.  The tender doctrine is

23    inapplicable to the case at hand, however, as Plaintiff is not seeking to receive equity by way of

24    overturning an unlawful foreclosure sale.  In fact, in the case at hand, no sale has yet occurred!

25    So, although the tender doctrine certainly has a place within wrongful foreclosure litigation, it is

26    inapplicable in the case at hand.

27         Tender is not a doctrine of standing necessary to challenge a wrongful foreclosure, as held

28    in the recent case of <u>Sacchi v. Mortgage Electronic Registration</u>.  See 2011 U.S. Dist. LEXIS

68007, 28 (holding that it would be "grossly inequitable" to require Plaintiffs to tender the balance of their mortgage before allowing them to challenge their wrongful foreclosure).  In fact, the legal authority upon which Defendant relies on to make this argument demonstrates this assertion.  All the cases upon which Defendant relies concern challenges to completed foreclosure sales based on irregularities in the sale procedure.  Abdallah v. United Sav. Bank, (1996) 43 Cal.App.4th 1101.   The courts in those cases held that, in order to challenge a sale, a post-foreclosure plaintiff must tender the amounts owed.  The rationale for the tender requirement is that "if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to plaintiffs."  FCPI at 1022.  These cases are inapposite to the case at hand, however, because they address post-foreclosure challenges to completed sales.  Thus, the rationale behind the tender doctrine is inapplicable to the case at hand and does not prevent Plaintiff from litigating her pre-sale lawsuit.

### 3.     Plaintiff Has Sufficiently Pleaded a Claim for Violation of Section 2924.

Plaintiff's cause of action for violation of Cal. Civil Code § 2924 is premised on the allegations that the late fees and payments included in the Notice of Default were waived by Defendants.  FAC at ¶ 78-80.  California law has long held that an act naturally intending to cause forbearance will excuse or waive the debtor's performance.  This is codified in Civil Code § 1511 as follows:

> The want of performance of an obligation, or of an offer of performance, in whole or in part, or any delay therein, is excused by the following causes…[w]hen the debtor is induced not to make it, **by any act** of the creditor intended or naturally tending to have that effect…

Cal. Civil Code § 1511 (emphasis added).  When this occurs, the plaintiff is entitled to all the benefits of the contract as if it had been performed by both parties pursuant to Cal. Civil Code § 1512.  In the present case, Plaintiff's performance was excused by way of Defendants' refusal to allow Plaintiff to reinstate.  FAC at ¶ 78.  Defendants argue that Plaintiff cannot allege that her performance was excused as the Deed of Trust contains explicit language stating that acts of forbearance, including activities of a loan modification, do not waive the Lender's right to enforce the terms of the DOT.  MTD at p. 12, ln. 4-7.  In support of its argument, Defendants cite

14

1   Paragraph 12 of the DOT which states, "Extension of time for payment or modification of

2   amortization of the sums secured by this Security Instrument grated by Lender to Borrower or any

3   Successor in Interest of Borrower shall not operate to release the liability of Borrower… Any

4   forbearance by Lender in exercising any right or remedy… shall not be a waiver of the exercise of

5   any right or remedy."  MTD at p. 12, footnote 14.  Contrary to Defendants' argument, this

6   provision of the DOT is inapposite to this cause of action because Plaintiff is not challenging the

7   right of Defendants to conduct a non-judicial foreclosure.  In the case at hand, Defendants did not

8   simply grant extension of time for payment or modification of amortization of the sums, but

9   actively instructed Plaintiff to not reinstate her loan although she had clearly expressed interest in

10  doing so.  FAC at ¶ 13, 19, 22.  In addition, Defendants cannot contractually waive Plaintiff's

11  remedy under Civil Code §§ 1511 and 1512.  Under Defendants' logic, Defendants could go as

12  far as removing means for Plaintiff to make payments under the DOT and then pursue their right

13  to non-judicial foreclosure.  Further, Defendants' argument that the DOT contains an express

14  power of sale provision is confusing at best as Plaintiff is not challenging the right of Defendants

15  to conduct a non-judicial foreclosure.  MTD at p. 11, ln. 16-18.  Again, had Defendants provided

16  reinstatement figures as requested by Plaintiff, Plaintiff would have reinstated her loans back in

17  September 2010.  FAC at ¶ 13, 62.  Instead, Defendants are now seeking the unlawful amount of

18  arrears which they caused to be amassed through its own bad conduct.  FAC at ¶ 79.  For these

19  reasons, Defendants' motion to dismiss this claim should be overruled.  However, should the

20  Court deem this insufficient, Plaintiff respectfully requests leave to amend.

21       **4.**     **Plaintiff Has Sufficiently Pleaded a Claim for Violation of Section 2924(c).**

22       Defendant wholly fails to address Plaintiff's claim that Defendant violated California

23  Civil Code 2924c by interfering with Plaintiff's right of reinstatement.  Plaintiff claims that

24  Defendants interfered with her right of reinstatement, and thereby violated California law, by

25  demanding as a condition of reinstatement, monies which Defendants waived pursuant to

26  California Civil Code 1511. FAC at ¶ 80.  Defendant attempts to defeat Plaintiff's arguments on

27  two grounds, first that Plaintiff's reinstatement requests must be made in writing and next that

28  Plaintiff's claims fail because Plaintiff was given a reinstatement quote.   Motion to Dismiss at

12:17-13:6.  However, Defendant's arguments miss the point entirely, as Plaintiff contends not that she was never given a reinstatement quote but, rather, that the demands were incorrect because they included waived monthly payments.

California Civil Code § 2924 delineates the categories of charges a lender can impose pursuant to a notice of default.  Specifically, in order to cure a declared default and thereby reinstate the loan, the mortgagor must pay in full:

(A)  all amounts under the deed of trust then due under the deed of trust

(B)  all amounts in default on recurring obligations not shown in the notice of default, and

(C)  all reasonable costs and expenses *which are actually incurred* in enforcing the terms of the obligation, deed of trust, or mortgage, and

(D)  trustee's or attorney's fees, subject to subdivision (d),

and thereby cure the default and reinstate the loan as if no default had occurred. (Civ. Code 2924c(a)) Plaintiff claims that Defendant violated this California law by demanding monies which were waived pursuant to California Civil Code 1511 and, therefore, could not be demanded as a condition of reinstatement.   Plaintiff does not contend that she was not provided a reinstatement quote, as Defendant has stated.

Defendant's remaining argument regarding Plaintiff's claim for violation of Civil Code 2924c is equally ridiculous.  Specifically, Defendant argues that Plaintiff's claim fails because Plaintiff has not alleged a written reinstatement quote.  However, Defendants have offered absolutely no legal authority in support of this assertion, nor could it because a written demand is not a requirement of Civil Code 2924c.  In support of this argument, Defendant cites to Civil Code 2943(c)(1), California's law regarding payoff demands but which has absolutely no correlation to California's law regarding reinstatement of loans facing foreclosure.  For this reason alone, Defendant's argument fails and must be overruled.

**E.      Plaintiff Has Sufficiently Pleaded a Cause of Action for Breach of Contract.**

Plaintiff alleges that Defendants violated Covenant 19 of the Deed of Trust by refusing to provide Plaintiff with reinstatement figures despite repeated attempts to obtain the same.  FAC at

16

¶ 51-52.  Defendants move to dismiss Plaintiff's cause of action on the grounds that Plaintiff conceded that Defendants provided her with a reinstatement figure, but the amount of unpaid debt was clearly listed in the NOD.  MTD at p. 14, ln. 11-12.  Defendants seems to misconstrue Plaintiff's right to reinstate.  First and foremost, Defendants' argument that the amount of unpaid debt was clearly listed in the NOD is unconvincing as the NOD does not replace the right to demand reinstatement figures.  If such were the case, all borrowers would be required to wait for the lender to record a NOD in order to reinstate their loan.  Plaintiff in this case expressed interest in reinstating her loan as far back as September 2010.  FAC at ¶ 13.  Under Defendants' logic, Plaintiff would have been required to wait until September 2012, when the NOD was recorded. Therefore, Defendant's argument must be overruled.  However, should the Court deem this insufficient, Plaintiff respectfully requests leave to amend.

### F.   Plaintiff Has Sufficiently Pleaded A Cause Of Action For Breach of the Covenant of Good Faith and Fair Dealing.

Every contract contains an implied covenant on the part of each party not to prevent or hinder performance by the other party.  Tanner v. Title Ins. & Trust Co. 20 Cal.2d 184 (1942). "[T]he implied covenant of good faith is read into contracts 'in order to protect the express covenants or promises of the contract.'"  Id at 373 (quoting Foley v. Interactive Data Corp., 47 Cal.3d 654, 683-684 (1988)).   To plead a claim for breach of the covenant of good faith and fair dealing, a party must allege "(1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract required him to do or that he was excused from having to do; (3) all conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff.  Woods v. Google, Inc., 889 F. Supp. 2d 1182, 2012 U.S. Dist. LEXIS 120748, 2012 WL 3673319, at *8 (N.D. Cal. 2012) (citing Judicial Counsel of California Civil Jury Instructions § 325 (2011)).  Defendants erroneously allege that Plaintiff has failed to identify an actual breach of any contractual terms from the agreement.  MTD at p. 15, ln. 8-10.  Contrary to Defendants' argument, however, Plaintiff has alleged that Defendants' refusing to provide Plaintiff with a reinstatement quote violated her right

1    under Covenant 19 of the Deed of Trust.  FAC at ¶ 48; p. 10, ¶ 32.  In addition, Defendants again

2    incorrectly allege that Plaintiff contradicts herself by conceding that she was given a

3    reinstatement quote, and regardless, the amount was stated in the NOD.  MTD at p. 15, ln. 11-14.

4    Again, the NOD was recorded in September 5, 2012 when Plaintiff has repeatedly asked for

5    reinstatement figures which Defendants refused beginning in September 2010.  MTD at p. 15, ln.

6    13-14; FAC at ¶ 13.

7         Defendants next argue that Plaintiff cannot assert a tortious breach of the implied

8    covenant of good faith and fair dealing claim because the parties are not in a fiduciary

9    relationship.  MTD at p. 15, ln. 19-20.  Defendants misconstrue Plaintiffs claim as the claim is

10   based on contract, and not in tort.  Plaintiff has established the contractual relationship between

11   Defendants and Plaintiff based on the Promissory Note and Deed of Trust to secure the loan for

12   Plaintiff's property.  FAC at ¶ 50.  For these reasons, Defendants' motion to dismiss this claim

13   should be overruled.  However, should the Court deem this insufficient, Plaintiff respectfully

14   requests leave to amend.

15        **G.      Plaintiff Has Sufficiently Pleaded An Unfair Competition Claim.**

16        California's Unfair Competition Law (UCL) prohibits "any unlawful, unfair or

17   fraudulent" business practice.  California Bus. & Prof. Code § 17200.  The statute "has a broad

18   scope that allows for 'violations of other laws to be treated as unfair competition that is

19   independently actionable' while also 'sweep[ing] within its scope acts and practices that

20   specifically prescribed by any other law.'"  Hauk v. JP Morgan Chase Bank USA, 552 F.3d 1114,

21   1122 (9th Cir. 2009) (quoting Kasky v. Nike, Inc., 27 Cal. 4th 939, 949 (2002)).  Plaintiff's UCL

22   claim is tethered to Defendants' violations of California law as set forth in the FAC.  FAC at ¶

23   85-89.  Defendants incorrectly object to Plaintiff's Claim for Violation of Business and

24   Profession's Code § 17200 ("UCL Violation") *et seq* on the grounds that (1) Plaintiff lacks

25   standing to sue under the UCL and (2) Plaintiff's underlying violations fail.  MTD at p. 16, ln. 11-

26   12.  For the reasons stated herein, each of Defendants' arguments fail.

27        **1.      Plaintiff Has Standing to Bring a UCL Claim.**

28        Defendants incorrectly states that Plaintiff fails to allege any lost money or property that

18

occurred as a result of Defendants' conduct. MTD at p. 16, ln. 24-25. Plaintiff has alleged actual damages including, but not limited to, lost money and property including but not limited to incurred attorneys' fees and costs to save her home and potential foreclosure of her property as a result of Defendants' wrongful conduct. FAC at ¶ 90. However, Defendants apparently want to ignore Plaintiff's specific allegations and the entire essence of her lawsuit. However, this does not defeat the fact that there is very clearly damages suffered. Defendants' motion to dismiss on this ground must be overruled.

### 2. Plaintiff Sufficiently Pleaded an Underlying Claim.

Contrary to Defendant's contentions, Plaintiff has alleged multiple violations of specific statutory and common law provisions which support her UCL claim. Specifically, Plaintiff has asserted causes of action for Breach of the Covenant of Good Faith and Fair Dealing, Breach of Contract, Violation of Cal Civ. Code § 2924, Fraud, and Negligent Misrepresentation. Accordingly, the Court should deny Defendants' motion to dismiss with respect to Plaintiff's claim for violations of California Business and Professions Code § 17200. However, should the Court deem these allegations insufficient, Plaintiff should be granted leave to amend.

### III. CONCLUSION

Based on the foregoing arguments, Plaintiff respectfully requests that the Motion to Dismiss Plaintiff's First Amended Complaint filed by Defendants be denied. However, should the Court deem his allegations insufficient, Plaintiff respectfully requests leave to amend.

DATED: January 3, 2014                    Respectfully submitted,

                                          MELLEN LAW FIRM

                                           _/s/ Eunji Cho_____
                                          Eunji Cho, Esq.
                                          Attorney for Plaintiff
                                          RACHEL FEVINGER