UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RACHEL FEVINGER, | Case No.: 5:13-cv-04839-PSG |
| Plaintiff, | **ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| BANK OF AMERICA, N.A. and US BANK N.A. TRUSTEE, | **(Re: Docket No. 18)** |
| Defendants. | |

Before the court is Defendants Bank of America, N.A. and US Bank N.A. Trustee's motion to dismiss all claims in the first amended complaint ("FAC").[1] Plaintiff Rachel Fevinger opposes.[2] The parties appeared for a hearing.[3] After considering the arguments, the court GRANTS Defendants' motion but only IN-PART.

---

[1] *See* Docket No. 18.

[2] See Docket No. 21.

[3] *See* Docket No. 36.

1

Case No.: 5:13-cv-04839-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

# I. BACKGROUND

In September 2005, Fevinger obtained a loan in the amount of $650,000.00 to finance property located at 3583-3585 Mauricia Avenue, Santa Clara, CA 95051.[4] The Deed of Trust ("DOT") identifies Fevinger as the borrower, American Mortgage Express Corp. as the lender, Fidelity National Title as trustee, and Mortgage Electronic Registration Systems, Inc. as nominee and beneficiary.[5] On September 22, 2005, Fevinger obtained a home equity line of credit in the amount of $97,000.00 secured by a DOT and assignment of rents.[6] On August 30, 2011, MERS recorded an assignment of the beneficial interest of the DOT to U.S. Bank, National Association as Trustee for Wamu Mortgage Pass-Through Certificates, Series WMALT 2006-AR1 ("U.S. Bank").[7] Bank of America then acted as the servicer of the loan.[8]

Fevinger stayed current on her loan from 2005 to 2009.[9] In 2009 the loan payment amounts increased[10] and Fevinger missed a few payments.[11] Fevinger received correspondence from Bank of America inviting her to consider modifying her loan agreement.[12] In August of 2010 she reached out to Bank of America, and was informed that she was a good candidate for loan

---

[4] *See* Docket No. 19-1, Ex. A.

[5] *See id.*

[6] *See* Docket No. 19-2, Ex. B.

[7] *See* Docket No. 19-3, Ex. C.

[8] *See id.*

[9] *See id.* at ¶ 12.

[10] *See id.*

[11] *See id.* at ¶ 13.

[12] *See id.* at ¶ 12.

modification. Fevinger alleges she was "ready, willing, and able" and "interested in reinstating" her loan, but was "lured" into awaiting a new payment schedule.[13]

Around August 30, 2010 Fevinger applied for a loan modification, but did not hear anything within a few weeks.[14] Fevinger called the Bank of America number from the correspondence and was told over the phone that it was US Bank's "policy not to foreclose on borrowers who had submitted complete loan modification applications and we're awaiting a decision."[15] Fevinger called the same Bank of America phone number a few weeks later, but was unable to obtain any information about the status of her application.[16] In October of 2010 Fevinger wrote a letter asking that Bank of America give her an update on the status of her application.[17] In November of 2010 Bank of America wrote back that it was still reviewing her application and would provide a more detailed response within twenty days.[18] After Fevinger did not hear back within twenty days, she called to check the status of her application and was instructed to reapply.[19]

Fevinger asked if she could resubmit her old application, but was told to await new application materials from Bank of America.[20] In December of 2010 Fevinger sought a reinstatement calculation but a "phone representative" told her to await new loan modification application materials and was reassured that her loan would not be foreclosed while she was

---

[13] *See id.* at ¶ 13.

[14] *See id.* at ¶ 14.

[15] *See id.* at ¶ 15.

[16] *See id.* at ¶ 16.

[17] *See id.*

[18] *See id.* at ¶ 17.

[19] *See id.* at ¶ 18.

[20] *See id.*

3
Case No.: 5:13-cv-04839-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

awaiting a loan modification.[21]  The new loan modification application materials finally arrived in February 2011.[22]  Fevinger "immediately submitted" all requested documentation in February, waited a "short time" and began to regularly follow up on the status of her application.[23]  In March or April of 2011 Bank of America informed Fevinger that her application was being reviewed.[24]  On April 4, 2011, Bank of America informed Fevinger that several pages of her modification were missing from her application.[25]  Fevinger responded by "immediately" faxing the requested documents, but they were not received.[26]  She re-faxed the pages on May 2 and May 3, 2011, and on May 6, 2011, Bank of America acknowledged receipt.[27]

On May 13, 2011 Fevinger called to "follow up" on the status of her application and alleges that she "was still ready willing and able to catch up with her mortgage" payments.[28]  Fevinger continued to follow up on the status of her application in July 2011 and was informed on July 19, 2011, that she needed "to provide updated financials."[29]  On August 9, 2011, Fevinger spoke with a bank representative and was informed that her application was still not "complete

---

[21] *See id.* at ¶ 19.

[22] *See id.*

[23] *Id.* at ¶ 20.

[24] *See id.*

[25] *See id.* at ¶ 21.

[26] *Id.*

[27] *See id.*

[28] *Id.* at ¶ 22.

[29] *Id.* at ¶ 24.

4
Case No.: 5:13-cv-04839-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

because it lacked utility bills and a required letter regarding HOA fees."[30] Fevinger alleges she had already submitted these documents.[31]

Over the course of August and September different Bank of America representatives told Fevinger to submit additional documents for review.[32] In October Fevinger received two letters from Bank of America informing her that her loan modification application could not be reviewed because she had not submitted paperwork regarding her social security benefits, retirement benefits, bank statements and tax returns.[33] In November 2011, Fevinger received a Home Affordable Mortgage Program ("HAMP") denial letter.[34]

Following her HAMP denial, Fevinger contacted Bank of America and was directed that "the best way to rectify" the denial of her loan modification application was to refile a new application.[35] At this point, Fevinger could no longer afford to pay off the "mounting arrears, late fees and attorney's fees" and "was very much at the mercy" of the bank.[36] During 2012 Fevinger "was forced to jump through hoops" in her contact with several Bank of America representatives and in September received a notice of default and subsequent denial of loan modification because her arrears had grown too large.[37]

---

[30] *Id.* at ¶ 25.

[31] *See id.*

[32] *See id.* at ¶¶ 27-29.

[33] *See id.* at ¶¶ 30-31.

[34] *See id.* at ¶ 32.

[35] *See id.* at ¶ 33.

[36] *See id.* at ¶ 33.

[37] *See id.* at ¶¶ 25-26 (at page 8).

5
Case No.: 5:13-cv-04839-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

On August 15, 2012, U.S. Bank substituted ReconTrust Company, N.A. as trustee under the DOT.[38] On September 6, 2012, ReconTrust recorded a notice of default because of Fevinger's arrears of $196,431.68.[39] A notice of trustee's sale was recorded by ReconTrust on December 12, 2012.[40] No foreclosure sale of the property has occurred.

Fevinger now brings claims for (1) breach of the implied covenant of good faith and fair dealing, (2) breach of contract, (3) negligent misrepresentation, (4) fraud, (5) violation of Cal. Civil Code § 2924 and (6) unfair competition.[41]

## II. LEGAL STANDARDS

### A. Motion to Dismiss

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[42] When a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief may be granted.[43] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[44] Under Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[45] Dismissal with prejudice and

---

[38] *See* Docket No. 19-4, Ex. D.

[39] *See* Docket No. 19-5, Ex. E.

[40] *See* Docket No. 19-6, Ex. F.

[41] *See* Docket No. 14 at 8-18.

[42] Fed. R. Civ. P. 8(a)(2).

[43] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[44] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[45] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

without leave to amend is appropriate if it is clear that the complaint could not be saved by amendment.[46]

**B.     Breach of Contract**

"Under California law, the elements of a breach of contract claim are: (1) the existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) resulting damage to plaintiff."[47]  It is "well settled that 'if an 'essential element' of a promise is reserved for the future agreement of both parties, the promise gives rise to no legal obligation until such future agreement is made.'"[48]  "To establish damages, a plaintiff must establish 'appreciable and actual damage.'"[49]  "Nominal damages, speculative harm, or threat of future harm do not suffice to show legally cognizable injury."[50]  "In addition, a contract requires an offer articulating the terms of the agreement and an acceptance that mirrors the offer."[51]

---

[46] *See Eminence Capital, LLC v. Asopeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment.") (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)).

[47] *EPIS, Inc. v. Fid. & Guar. Life Ins. Co.*, 156 F. Supp. 2d 1116, 1124 (N.D. Cal. 2001) (modifying punctuation) (citing *Reichert v. General Ins. Co.*, 68 Cal. 2d 822, 830 (1968)).

[48] *Cnty. of Alameda v. Superior Court*, Case No. A121590, 2009 WL 2993813, at *5 (Cal. Ct. App. Sept. 21, 2009) (*quoting City of Los Angeles v. Super. Ct. of L.A. Cnty.*, 51 Cal. 2d 423, 433 (1959)); *But see Copeland v. Baskin Robbins U.S.A.*, 96 Cal. App. 4th 1251, 1255-60 (2002) (holding that in circumstances where essential elements have been agreed to by the parties, agreements to negotiate may be enforceable).

[49] *Benedict v. Hewlett-Packard Co.*, Case No. 5:13-cv-00119-LHK, 2014 WL 234218, at *5 (N.D. Cal. Jan. 21, 2014) (quoting *Aguilera v. Pirelli Armstrong Tire Co.*, 223 F.3d 1010, 1015 (9th Cir. 2000)); *see also Patent Scaffolding Co. v. William Simpson Constr. Co.*, 256 Cal. App. 2d 506, 511 (1967) ("A breach of contract without damage is not actionable.").

[50] *Id.* (citing *Aguilera*, 223 F.3d at 1015); *see also Ruiz v. Gap Inc.*, 622 F.Supp.2d 908, 917 (N.D. Cal. 2009) ("Under California law, a breach of contract claim requires a showing of appreciable and actual damage.").

[51] *Sutherland v. Francis*, Case No. 5:12-cv-05110-LHK, 2014 WL 879697, at *3 (N.D. Cal. Mar. 3, 2014) (citing *Chaganti v. I2 Phone Int'l, Inc.*, 635 F. Supp. 2d 1065, 1071 (N.D. Cal. 2007) ("An offer must clearly articulate the terms of the agreement and the acceptance must be absolute, unqualified and a mirror image of the offer.").

7
Case No.: 5:13-cv-04839-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

### C.     Breach of Implied Covenant of Good Faith and Fair Dealing

"It has long been recognized in California that every contract contains an implied covenant of good faith and fair dealing that neither party will injure the right of the other party to receive the benefits of the agreement."[52]  "The covenant protects the express covenants or promises of the contract."[53]  The "factual elements necessary to establish a breach of the covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct."[54]  "An implied covenant claim requires the plaintiff to 'show that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities, prompted not by an honest mistake, bad judgment or negligence but rather by a conscious and deliberate act, which unfairly frustrates the agreed common purposes and disappoints the reasonable expectations of the other party thereby depriving that party of the benefits of the agreement.'"[55]

### D.     Fraud and Negligent Misrepresentation

"The elements of a cause of action for fraud in California are: '(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to

---

[52] *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1041 (N.D. Cal. 2012) (citing *Wolf v. Walt Disney Pictures & Tel.*, 162 Cal. App. 4th 1107, 1120 (2008)).

[53] *Id.* at 1041-42 (citing *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal. 4th 342, 373 (1992)).

[54] *Rosenfeld v. JP Morgan Chase Bank, N.A.*, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010).

[55] *Williams v. Wells Fargo Bank, N.A.*, Case No.: 5:13-cv-03387-EJD, 2013 WL 5444354, at *2 (N.D. Cal. Sept. 30, 2013) (quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990)).

8
Case No.: 5:13-cv-04839-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'"[56]  "Under the heightened pleading standard in the federal rules, a plaintiff must also allege the specific circumstances constituting fraud such that the defendant has notice of the actual misconduct."[57]  "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged."[58]  A cause of action "'based on a false promise is simply a type of *intentional* misrepresentation, i.e., actual fraud.'"[59]

"Under California law, a negligent misrepresentation claim is comprised of the same elements as a claim for fraud: '(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage.'"[60]  "The only difference is that a negligent misrepresentation claim does not require knowledge of falsity."[61]  "Rather, to plead negligent misrepresentation, it is sufficient to allege that the defendant lacked reasonable grounds to believe the representation was true."[62]  "Additionally,

---

[56] *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 974 (1997)).

[57] *Expression Sys., LLC v. UMN Pharma, Inc.*, Case No. 2:13-cv-00965-JAM-KJ, 2014 WL 281092, at *2 (E.D. Cal. Jan. 23, 2014) (citing *Kearns*, 567 F.3d at 1124.).

[58] Kearns, 567 F.3d at 1126 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)).

[59] *Foster Poultry Farms v. Alkar-Rapidpak-MP Equip., Inc.*, 868 F. Supp. 2d 983, 995 (E.D. Cal. 2012) (emphasis in original) (quoting *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal. App. 4th 153, 158-59 (1991)).

[60] *Id.* at 995-996 (quoting *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007)).

[61] *Expression Sys.*, 2014 WL 281092, at *2 (citing *Foster Poultry*, 868 F. Supp. 2d at 994-95).

[62] *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141-42 (C.D. Cal. 2003).

9
Case No.: 5:13-cv-04839-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

to state a claim for negligent misrepresentation, the plaintiff must also show that the defendant owed the injured party a duty of care."[63]

### III. DISCUSSION

**A.   Request for Judicial Notice**

Defendants request the court take that judicial notice of various foreclosure-related documents recorded in the Santa Cruz County Recorder's Office (Exhibits A through I).[64] The court may take judicial notice of a "fact that is not subject to reasonable dispute because it is generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[65] Fevinger has not objected to the request for judicial notice. The authenticity of the foreclosure-related documents is not in dispute and may be verified by resort to the public record.[66] The court, however, will not rely on facts contained within the documents that reasonably may be subject to dispute.[67] Defendants' request for judicial notice therefore is GRANTED as to all documents.

---

[63] *Martin v. Litton Loan Servicing LP*, Case No. 2:12-cv-970-MCE-EFB, 2014 WL 977507, at *15 (E.D. Cal. Mar. 12, 2014) (citing *Eddy v. Sharp*, 199 Cal. App. 3d 858, 864 (1988) ("As is true of negligence, responsibility for negligent misrepresentation rests upon the existence of a legal duty, imposed by contract, statute or otherwise, owed by a defendant to the injured person.")).

[64] *See* Docket No. 19.

[65] Fed. R. Evid. 201(b).

[66] *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because" it: "(2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

[67] *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (finding the district court erred in relying on disputed facts contained within documents that otherwise were the proper subject of judicial notice); *see also* Fed. R. Evid. 201(b).

## B. Fevinger's Breach of Contract Claim is Insufficiently Pleaded

Defendants urge that Fevinger's claim for breach of "Section 19 of the DOT" fails because the allegations do not "point to any breach of an express contract term."[68] Fevinger responds that Defendants breached the contract by (1) refusing to provide her with the size of arrears to enable her to reinstate her loan and (2) providing her with an erroneous quote that overstated the size of her default.[69]

The complaint concedes that Fevinger was provided with a reinstatement figure – she just disputes the accuracy of that figure.[70] Even taking the allegations in the complaint as true,

---

[68] Docket No. 18 at 13; see also Covenant 19 of the DOT:

> **19. Borrower's Right to Reinstate After Acceleration.**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument.  Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

Docket No. 18-1, Ex. A at 10.

[69] *See* Docket No. 14 at ¶ 52 (quoting Covenant 19 of the DOT) ("Defendants breached Covenant 19 of the DOT "by refusing to provide Plaintiff with the amount of 'sums which then would be due under this Security Instrument and Note as if no acceleration had occurred' despite Plaintiff's repeated attempts to obtain the same.").

[70] *See* Docket No. 14 at ¶ 80 ("Defendants continued to provide Plaintiff with an inaccurate reinstatement quote, or no reinstatement quote at all, which demanded that Plaintiff tender monies for months in which Plaintiff's performance was waived by virtue of Cal. Civil Code § 1511."); *see also* Cal. Civil Code § 1511 ("The want of performance of an obligation, or of an offer of performance, in whole or in part, or any delay therein, is excused by the following causes, to the

11
Case No.: 5:13-cv-04839-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

the court cannot see how Defendants waived Fevinger's debt obligations under the contract and thus provided an artificially inflated value to Fevinger. The DOT contains explicit language stating that acts of forbearance, including activities of a loan modification, do not waive the Lender's right to enforce the terms of the DOT. Even if the loan was under review for a modification, Fevinger was still obligated to remain current on her loan – she had a preexisting legal duty. The DOT also is explicit: the "Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees."[71] The court therefore cannot credit Fevinger's argument that the reinstatement figure was artificially inflated. Because Fevinger remains in default on the loan, her breach of contract claim cannot survive. Although in light of the contract language the court is skeptical that this claim can be cured through amendment, Fevinger is granted leave to amend this claim.

**C.   Because Fevinger Has Not Adequately Pleaded that She Fulfilled Her Obligations Under the Contract or that Defendants Breached the Contract, Her Breach of the Covenant of Good Faith and Fair Dealing Claim Fails**

In this case Fevinger has not adequately pleaded that she fulfilled her obligations under the contract or that Defendants breached the contract. Fevinger fell behind on her payments and never cured the default. Fevinger's complaint concedes that she was provided with a reinstatement figure to settle her arrears.[72] She never did. Her claim for breach of the covenant of good faith and fair

---

extent to which they operate: 1. When such performance or offer is prevented or delayed by the act of the creditor, or by the operation" of law.).

[71] Docket No. 18-1, Ex. A at 10.

[72] *See supra* note 70.

12
Case No.: 5:13-cv-04839-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

dealing thus cannot survive.[73] Because the court is not persuaded that amendment as to this claim is futile, the claim is dismissed with leave to amend.

**D.      Fraud and Negligent Misrepresentation**

Fevinger brings fraud and negligent misrepresentation claims against Defendant Bank of America. In short, Fevinger alleges that Bank of America "orally represented" that Fevinger's property "would not be lost via foreclosure while her account was being reviewed for a loan modification."[74]

**1.      Fraud**

As an initial matter, the court rejects Bank of America's argument that Fevinger's fraud and negligent misrepresentation claims are insufficiently pleaded pursuant to Rule 9 because the complaint does not spell out (1) which employees made specific representations (2) under what authority and (3) when those misrepresentations were made. The operative complaint does a commendable job alleging the calls Fevinger made to Bank of America in this case: her allegations specifically detail when calls were made, who she talked to and what was discussed. This is adequate at the pleading stage – even under Rule 9's heightened scrutiny.

Bank of America also argues that the purported misrepresentation does not constitute actionable fraud. Here, the Bank is on firmer ground. The complaint alleges a single misrepresentation: that Fevinger's property would not be sold while her application for a loan modification was being reviewed. The complaint accepts that Fevinger's loan modification

---

[73] The "factual elements necessary to establish a breach of the covenant of good faith and fair dealing are: (1) the parties entered into a contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *Rosenfeld*, 732 F. Supp. 2d at 968.

[74] Docket No. 14 at ¶ 59.

13
Case No.: 5:13-cv-04839-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

application was denied first[75] and then the notice of default was recorded.[76]  It also must be pointed out that the property has not been sold.

Fevinger responds to this point by arguing that Bank of America's agents represented that so long as any loan modification application was pending, no foreclosure activity would occur – including the filing of a notice of default or notice of trustee's sale.  Because the notice of default was filed before Fevinger received a denial of her second loan modification application, Fevinger's fraud claim is actionable.

Despite Fevinger's representations at the hearing on this motion, the complaint does not clearly allege that Fevinger was told that no foreclosure activity would occur while any loan modification application was pending.  Instead, the complaint alleges the actionable fraud was Bank of America's oral representations that Fevinger's property "would not be lost via foreclosure while her account was being reviewed for a loan modification."[77]  The complaint includes allegations that Fevinger was told the Bank had a general policy to not foreclose homes while loan modification applications were pending and specifically instructed that her property would not be foreclosed while her loan modification application was pending.  Generously construed, the claim language remains ambiguous and dismissal is warranted.  Because the court does not believe that amendment as to this claim would be futile, Fevinger is granted leave to amend.

### 2. Negligent Misrepresentation

Bank of America urges that because Fevinger has not adequately pleaded why Bank of America owed her a duty in this case, her claim for negligent misrepresentation must be dismissed.

---

[75] *See* Docket No. 14 at ¶ 32 ("In November 2011, Plaintiff received a HAMP denial letter, claiming that because she had not sent in all the required materials, she could not be considered for a HAMP modification.").

[76] *See id.* at ¶ 26 ("In September 2012" Fevinger "received a Notice of Default" after her first loan modification application was denied, but while a second "loan modification application was pending.").

[77] *See* Docket No. 14 at ¶ 69.

14
Case No.: 5:13-cv-04839-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

Fevinger concedes that, in a vacuum, a bank carries no duty to review a loan modification application. But according to Fevinger, that concession is not dispositive because she was instructed by Bank of America not to reinstate her loan on the promise that her home would not be foreclosed while her loan modification application was pending. Once Bank of America elected to review her application, it assumed a duty of care.

The court disagrees. Financial institutions "typically do not owe a duty of care to a borrower when its activities do not exceed those of a conventional money lender."[78] "Numerous cases have characterized a loan modification as a traditional money lending activity, warranting application of the rule articulated in *Nymark*" that "a financial institution in general owes no duty of care to a borrower."[79] The court agrees with the great weight of authority interpreting *Nymark*

---

[78] *Alvarado v. Aurora Loan Servs., LLC*, Case No. SA12-cv-0524-DOC, 2012 WL 4475330, at *6 (C.D. Cal. Sept. 20, 2012) (citing *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991) (As "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.")).

[79] *Settle v. World Sav. Bank, F.S.B.*, Case No. ED 11-cv-00800-MMM, 2012 WL 1026103, at *8 (C.D. Cal. Jan. 11, 2012) (listing cases) (citing *Nymark*, 231 Cal. App. 3d at 1096); *see also Sullivan v. JP Morgan Chase Bank, NA*, 725 F. Supp. 2d 1087, 1094 (E.D. Cal. 2010) (citing *Nymark* and holding that "[p]laintiffs have provided no authority to support their argument that lenders owe borrowers a duty of care not to misinform them about the loan modification process"); *Argueta v. JP Morgan Chase*, Case No. 2:11-cv-441-WBS-GGH, 2011 WL 2619060, *5 (E.D. Cal. June 30, 2011) (citing *Nymark* and stating that "Plaintiff's allegations about the loan modification application process are insufficient to plausibly suggest that defendants owed plaintiff a duty of care."); *Becker v. Wells Fargo Bank, N.A., Inc.*, Case No. 2:10-cv-02799-LKK-KJN-PS, 2011 WL 1103439, at *23 (E.D. Cal. Mar. 22, 2011) (citing *Nymark* for the proposition that allegations concerning loan modification application process did not give rise to a duty on the part of the lender); *Coppes v. Wachovia Mortg. Corp.*, Case No. 2:10-cv-01689-GEB-DAD, 2011 WL 1402878, *7 (E.D. Cal. Apr.13, 2011) ("Plaintiff has not alleged 'special circumstances' plausibly suggesting Wachovia owed her a duty of care [during the loan modification process] because it 'actively participate[d] in the financed enterprise beyond the domain of the usual money lender.'"); *Dooms v. Federal Home Loan Mortg. Corp.*, Case No. F 11-cv-0352-LJO-DLB, 2011 WL 1303272, *9 (E.D. Cal. Mar. 31, 2011) (citing *Nymark* and stating that the "moving defendants are correct that a negligence claim based on their roles as lender and loan servicer fails in the absence of a duty to forego foreclosure or to provide a loan modification. The complaint lacks facts to support an actionable duty to impose on the moving defendants. 'No such duty exists' for a lender 'to determine the borrower's ability to repay the loan" and the "lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's) (citation omitted); *DeLeon v. Wells Fargo Bank N.A.*, Case No. 5:10-CV-01390-LHK, 2011 WL 311376, at *9 (N.D. Cal. Jan. 28, 2011) ("Because Plaintiffs still have not alleged any participation beyond that of the usual money lender [in the loan modification process], they cannot state a negligence claim against Wells Fargo"); *But see*

and holds that because loan modification activities are within the traditional scope of the lender

Bank of America owed Fevinger no duty of care regarding her loan modification application.[80]

### E.     Cal. Civil Code § 2924

The amended complaint's Section 2924 claim is a bit murky.  The court's best understanding of the claim is that Defendants' conduct interfered with Fevinger's statutory right under Cal. Civil Code § 2924c to reinstate her loan more than five days before the date of the foreclosure sale by inflating the fees and payments she owed on her loan.  The relevant portion of the statute provides:

> Reinstatement of a monetary default under the terms of an obligation secured by a deed of trust, or mortgage may be made at any time within the period commencing with the date of recordation of the notice of default until five business days prior to the date of sale set forth in the initial recorded notice of sale.[81]

Fevinger urges that because Defendants waived certain "fees and payments" under Cal. Civil Code Section 1511 she was induced to inaction and is therefore "entitled to all the benefits of the contract had it been performed by both parties."[82]  Defendants demand that Fevinger cure the

---

*Ansanelli v. JP Morgan Chase Bank, N.A.*, Case No. 3:10-cv-03892-WHA, 2011 WL 1134451, *7 (N.D. Cal. Mar. 28, 2011) (citing *Nymark* and finding that a lender defendant owed a duty to plaintiff because defendant went "beyond the domain of a usual money lender" by going "beyond its role as a silent lender and loan servicer to offer an opportunity to plaintiffs for loan modification and to engage with them concerning the trial period plan").

[80] *Id.*

> While there appears to be inconsistent decisions among the California districts regarding whether loan modifications are within the activities of a conventional money lender, this Court finds persuasive the cases holding that offering loan modifications is sufficiently entwined with money lending so as to be considered within the scope of typical money lending activities.  If money lending institutions were held to a higher standard of care by offering a service that could benefit borrowers whose circumstances have changed, the money lender would be discouraged from leniency and would assert their rights to reclaim the property upon the borrower's default.  The conventional-moneylender test shall be sufficient to determine that there is no duty of care owed in servicing Plaintiff's mortgage loan and loan modification.  As the Plaintiff is unable to establish a duty, it is unnecessary to discuss the elements of breach, causation, and damages.

[81] Cal. Civil Code Section 2924c(e).

[82] *See* Docket No. 14 at ¶ 78.

16
Case No.: 5:13-cv-04839-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS

default, and the associated Notice of Default, sough an inaccurate, unwarranted reinstatement payment in violation of Section 2924.

As explained above, Fevinger has not adequately pleaded that Defendants waived any fees or payments. Dismissal of her claim for a violation of Section 2924 is therefore warranted.

F.   **Fevinger's UCL Claim Pursuant to Section 17200**

Defendants finally take issue with Fevinger's UCL claim on two grounds: (1) want of injury-in-fact and (2) the more common failure to predicate the UCL claim on any underlying fraudulent, unlawful, or unfair conduct. Fevinger counters that she's suffered through increased late fees and attorney's fees stemming from the foreclosure proceedings. The court agrees with Defendants. The complaint has not established any injury-in-fact that is the result of Defendants actions. Moreover, absent any underlying fraudulent, unlawful or unfair conduct the UCL claim cannot survive. As above, the court is not yet persuaded that amendment of this claim is futile, so Fevinger is granted leave to amend.

Any amended complaint must be filed within fourteen days of this order.

**IT IS SO ORDERED.**

Dated: March 31, 2014

                                             _____
                                             PAUL S. GREWAL
                                             United States Magistrate Judge

Case No.: 5:13-cv-04839-PSG
ORDER GRANTING-IN-PART DEFENDANTS' MOTION TO DISMISS