UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RACHEL FEVINGER, | Case No. 5:13-cv-04839-PSG |
| Plaintiff, | **ORDER GRANTING IN-PART DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| BANK OF AMERICA, N.A., et al., | **(Re: Docket No. 66)** |
| Defendants. | |

Before the court is Defendants Bank of America, N.A. ("BANA") and US Bank N.A. Trustee's motion to dismiss.[1] Plaintiff Rachel Fevinger opposes. The parties appeared for a hearing.[2] Having considered the arguments, the court GRANTS Defendants' motion, but only IN-PART, as explained below.

---

[1] *See* Docket No. 71. Defendant Nationstar Mortgage LLC does not join in this motion but has separately filed its own motion to dismiss. *See* Docket No. 73.

[2] *See* Docket No. 72.

# I. BACKGROUND

## A.  Factual Background[3]

In 2005, Fevinger obtained a residential mortgage for property located at 3583-3585 Mauricia Avenue, Santa Clara, CA 95051.[4]  To secure the loan, Fevinger executed a deed of trust and promissory note in favor of the lender American Mortgage Express Corporation[5]  BANA later became servicer to Fevinger's loan until Nationstar acquired the servicing rights.[6]  Fevinger remained current on her loan from 2005 to 2009.  But then it became "increasingly difficult" for Fevinger to stay current.[7]

In August 2010, Fevinger responded to an offer to reinstate her loan and contacted BANA.[8]  BANA representative Selena advised Fevinger not to reinstate her loan and "await a loan modification and a new payment amount since Plaintiff was such a good candidate for loan modification."[9]  Fevinger "was only a few months behind in her payments and was ready willing and able to reinstate her loan and, in fact, would have done so."[10]

Fevinger applied for a loan modification on or about August 30, 2010.  In September and October Fevinger called to follow up.  Fevinger also followed up with written correspondence.[11]  During the September call, a bank representative told Fevinger that BANA's policy was not to

---

[3] For the purposes of Defendants' motion, the court draws the following facts, accepted as true, from Fevinger's third amended complaint.  *See* Docket No. 63.

[4] *See id.* at ¶¶ 2 and 11.

[5] *See id.* at ¶ 11.

[6] *See id.*

[7] *Id.* at ¶ 12.

[8] *See id.* at ¶ 13.

[9] *Id.*  In this instance and others, Fevinger does not allege the full name of the BANA representative.

[10] *Id.*

[11] *See id.* at ¶¶ 14-17.

2
Case No. 5:13-cv-04839-PSG
ORDER GRANTING IN-PART DEFENDANTS' MOTION TO DISMISS

initiate foreclosure proceedings on borrowers awaiting decisions on completed modification applications.[12]

In November, BANA informed Fevinger that it was reviewing her application and would respond more completely within 20 days.[13] In December, after she did not hear from BANA, Fevinger contacted the bank.[14] A BANA representative informed Fevinger that she had to reapply for modification, but that loan reinstatement was unnecessary because of the bank's policy to refrain from initiating foreclosure proceedings on borrowers with pending modification applications.[15]

In February 2011, Fevinger submitted a second loan modification application.[16] In March or April, BANA informed Fevinger that it was reviewing the application.[17] In late April, BANA representative Nissa informed Fevinger that her application was missing several pages.[18] Fevinger provided the missing material.[19] On May 6, 2011, BANA confirmed receipt.[20] A week later,

---

[12] *See id.* at ¶ 15 ("The man, whose name Plaintiff cannot presently remember but which can be readily ascertained through discovery, told Plaintiff that it was the lender's and Bank of America's policy to not conduct foreclosure proceedings on borrowers who had submitted complete loan modification applications and were awaiting a decision.").

[13] *See id.* at ¶ 18.

[14] *See id.* at ¶¶ 19-20.

[15] *See id.* at ¶ 20

> Plaintiff was told by the customer service relationship individual, whose name Plaintiff does not currently remember but whose name is in Defendant's possession and ascertainable by Plaintiff through discovery, that she should await her application materials instead of reinstating her loan. In fact, this representative reiterated the promise that Plaintiff had been told when she first began her loan modification application, i.e. that the lender's policy was to not conduct foreclosure proceedings or foreclose on individuals who are awaiting the loan modification, and that, accordingly, Plaintiff need not worry about reinstating her loan.

[16] *See id.* at ¶ 23.

[17] *See id.*

[18] *See id.*

[19] *See id.*

Fevinger called to check on her application and BANA representative Ahmed informed her that the application was under review, but reiterated that BANA would not initiate foreclosure proceedings while her application was pending and explained that, if Fevinger opted for reinstatement, she would not qualify for modification.[21]

In July, Fevinger contacted BANA periodically.[22] On July 19, 2011, BANA representative Mario informed Fevinger that she needed to provide updated financial statements.[23] Fevinger provided the requested materials.[24] On August 9, 2011, BANA representative Susan informed Fevinger that her application was missing additional documents.[25] Fevinger faxed the missing materials. On August 15, 2011, BANA representative Dawn Donaldson informed Fevinger that materials were still missing.[26]

In late August, US Bank acquired the interest of Fevinger's deed, but BANA remained the servicer of Fevinger's loan.[27] In September, several BANA representatives informed Fevinger that her application was missing documents.[28] Fevinger provided the additional documents despite

---

[20] *See id.*

[21] *See id.* at ¶ 24 ("Ahmed told her not to worry – Bank of America's policy was not to not conduct foreclose proceedings on borrowers who were in loan modification review. In addition, Ahmed told Plaintiff that if she reinstated her loan, she would not get a loan modification.").

[22] *See id.* at ¶¶ 25-26.

[23] *See id.*

[24] *Id.* at ¶ 26. Bank of America confirmed receipt. *See id.*

[25] *See id.* at ¶ 27 ("Plaintiff spoke with an individual named Susan who informed Plaintiff that the application was not yet complete because it lacked utility bills and a required letter regarding HOA fees.").

[26] *See id.* at ¶ 29. Fevinger disputed this, but faxed the materials a second time. *See id.*

[27] *Id.* at ¶ 30.

[28] *See id.* at ¶ 32

   Throughout September, various representatives told Plaintiff that the information Plaintiff had already sent was missing. For example, on September 3, 2011, a representative by the name of Cindy requested the application materials which Plaintiff had provided and which

4
Case No. 5:13-cv-04839-PSG
ORDER GRANTING IN-PART DEFENDANTS' MOTION TO DISMISS

insisting that she had previously produced them.[29]  On October 1, 2011, Fevinger received a letter from BANA stating that it could not process her application because the application lacked necessary documentation.[30]  Fevinger contacted a BANA representative who informed her that BANA had the necessary documents and the letter was sent in error.[31]  On October 5, 2011, Fevinger received a letter from BANA that documents were missing from her application.[32]  Fevinger contacted BANA and several representatives informed her that despite the letter, BANA had received all of the necessary documents and the application was complete but remained under review.[33]

In November, 2011, Fevinger received a letter providing that BANA would not consider her loan modification application because it was missing necessary materials.[34]  In response, Fevinger contacted BANA but its representative, Markus, informed her that the best solution was reapplication.[35]  In early 2012, Fevinger reapplied for a loan modification and BANA representatives continued to tell her that her home would not be subject to foreclosure proceedings

---

had been confirmed received. A person named Chris requested new documents on September 13, 2011. On September 14, 2011, a person named Lisa also requested new documents. On September 16, 2011, an individual named Shawna requested additional documents, as well. After faxing Shawna the requested new documents, Plaintiff checked in and Monique told Plaintiff that the documents were not there and had Plaintiff fax them again. All told, five different representatives made plaintiff fax the same paperwork five times throughout September.

[29] *See id.*

[30] *Id.* at ¶ 33.

[31] *See id.* ("Plaintiff contacted Bank of America to verify the information contained in the letter and spoke with Dawn Donaldson, who confirmed that Bank of America had the documents and not to worry, that the letter was in error.").

[32] *See id.* at ¶ 34.

[33] *See id.* ("Again, Plaintiff called the bank and spoke to various bank representatives – Grace, Martha, Raven, Reggie, and again Dawn Donaldson. Each representative confirmed receipt of the tax return in question and assured Plaintiff that her application was complete and still under review, notwithstanding the letters she was receiving.").

[34] *See id.* at ¶ 35.

[35] *See id.* at ¶ 36.

5
Case No. 5:13-cv-04839-PSG
ORDER GRANTING IN-PART DEFENDANTS' MOTION TO DISMISS

during the pendency of her application.[36] In September, 2012, Fevinger received a notice of default.[37] BANA later denied her loan modification application based on the outstanding arrears still owed.[38]

**B.     Procedural History**

On October 18, 2013, Fevinger filed the first complaint in this case.[39] On December 2, 2013, she filed her first amended complaint.[40] On March 31, 2014, the court dismissed the first amended complaint with leave to amend.[41] On April 14, 2014, Fevinger filed her second amended complaint.[42] On June 6, 2014, the court granted Fevinger leave to file a third amended complaint.[43] This most recent complaint alleges (1) breach of the implied covenant of good faith and fair dealing, (2) interference with contract, (3) fraud and (4) unfair competition.[44]

## II. LEGAL STANDARDS

**A.     Motion to Dismiss**

A complaint must contain "a short plain statement of the claim showing that the pleader is entitled to relief."[45] If a plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a claim upon which relief

---

[36] *Id.* at ¶ 37-38 ("Each time Plaintiff would ask about the status of the foreclosure, and the response would be that Plaintiff need not worry about a foreclosure because Plaintiff was in loan modification review.").

[37] *See id.* at ¶ 39.

[38] *See id.*

[39] *See* Docket No. 1.

[40] *See* Docket No. 14.

[41] *See* Docket No. 38.

[42] *See* Docket No. 43.

[43] *See* Docket No. 62.

[44] *See* Docket No. 63.

[45] Fed. R. Civ. P. 8(a)(2).

6
Case No. 5:13-cv-04839-PSG
ORDER GRANTING IN-PART DEFENDANTS' MOTION TO DISMISS

may be granted.[46] A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[47] Under Fed. R. Civ. P. 12(b)(6), "dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[48] Dismissal without leave to amend is appropriate if it is clear that the complaint could not be saved by amendment such as after a plaintiff's "repeated failure to cure deficiencies by amendments previously allowed."[49]

**B.    Request for Judicial Notice**

The court may take judicial notice of a "fact that is not subject to reasonable dispute because it is generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."[50]

**C.    Fed. R. Civ. P. 9(b)**

Under Rule 9(b), a plaintiff must state "with particularity the circumstances constituting fraud" which requires "statements regarding the time, place, and nature of the alleged fraudulent activities."[51] "Mere conclusory allegations of fraud are insufficient."[52] To satisfy Rule 9(b)'s heightened standard, allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."[53] This includes "the

---

[46] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[47] *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

[48] *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

[49] *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

[50] Fed. R. Evid. 201(b).

[51] *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994).

[52] *Id.*

[53] *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

who, what, when, where, and how of the misconduct charged."[54]  A plaintiff also must allege "what is false or misleading about a statement, and why it is false."[55]  "A court may dismiss a claim grounded in fraud when its allegations fail to satisfy [Rule] 9(b)'s heightened pleading requirements."[56]

### III. DISCUSSION

#### A.   Request for Judicial Notice

Defendants request that the court take judicial notice of loan and foreclosure documents.[57]  Fevinger has not objected to Defendants' request.  The documents' authenticity is not in dispute and may be verified by resort to the public record.[58]  Although the court will not rely on facts contained within the documents that reasonably may be subject to dispute, the court takes judicial notice of the loan and foreclosure documents.

#### B.   Breach of the Implied Covenant of Good Faith and Fair Dealing

Fevinger alleges BANA breached the covenant of good faith and fair dealing implied in at least her loan agreement by interfering with Fevinger's ability to cure her default by refusing to provide Fevinger with an accurate reinstatement quote.

"The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made."[59]  The covenant "cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their

---

[54] *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted).

[55] *GlenFed*, 42 F.3d at 1548.

[56] *Saldate v. Wilshire Credit Corp.*, 686 F. Supp. 2d 1051, 1064 (E.D. Cal. 2010).

[57] *See* Docket No. 67.

[58] *See* Fed. R. Evid. 201(b).

[59] *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349 (2000).

8
Case No. 5:13-cv-04839-PSG
ORDER GRANTING IN-PART DEFENDANTS' MOTION TO DISMISS

agreement."[60] The elements of a claim for breach of the covenant of good faith and fair dealing are:

>   (1) the plaintiff and the defendant entered into a contract;
>   (2) the plaintiff did all or substantially all of the things that the contract required him to do or that he was excused from having to do;
>   (3) all conditions required for the defendant's performance had occurred;
>   (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and
>   (5) the defendant's conduct harmed the plaintiff.[61]

Fevinger urges Defendants breached the implied covenant when BANA advised Fevinger to pursue a loan modification and "refused to provide Plaintiff with a reinstatement quote and instead advised Plaintiff to not reinstate and apply for a loan modification."[62] According to Fevinger, Defendants "refusal to provide a reinstatement calculation interfered with Fevinger's right to reinstatement pursuant to Section 19 of the Deed of Trust."[63] Section 19 of the Deed of Trust also specifically provides conditions that Fevinger must satisfy before her right to reinstate matures.[64] Those conditions include:

- Payment of all sums due under agreement.
- Cure of any default.

---

[60] *Id.* at 349-50.

[61] *Woods v. Google, Inc.*, 889 F. Supp. 2d 1182, 1194 (N.D. Cal. 2012) (citing Judicial Counsel of California Civil Jury Instructions § 325 (2011)).

[62] Docket No. 63 at ¶ 43.

[63] *Id.*

[64] *See* Docket No. 67, Ex. A at 10.

> Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the property and rights under this security instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.

9
Case No. 5:13-cv-04839-PSG
ORDER GRANTING IN-PART DEFENDANTS' MOTION TO DISMISS

- Payment of all attorneys' fees, property inspection and valuation fees.[65]

Fevinger's earlier allegations, however, belie her present argument. Fevinger previously conceded that BANA provided a reinstatement figure to her – she just took issue with the size of the figure.[66] Fevinger now concedes that she was behind on her payments, but takes the position that BANA "refused" to provide a reinstatement quote. Given this irreconcilable inconsistency, the court does not credit Fevinger's new allegation.[67] If Fevinger was committed to curing her several month default, she had actual knowledge of the number of payments she had missed – she represents that it was only two or three months.[68] Fevinger's allegations do not marshal any alternative cognizable excuse.[69]

The undersigned only recently joined another judge of this district and rejected the argument that a lender's inducement of a homeowner to stop making payments on a home mortgage loan through the promise of forestalling future foreclosure proceedings provides an

---

[65] *See id.*

[66] *See* Docket No. 14 at ¶ 80 ("Defendants continued to provide Plaintiff with an inaccurate reinstatement quote, or no reinstatement quote at all, which demanded that Plaintiff tender monies for months in which Plaintiff's performance was waived by virtue of Cal. Civil Code § 1511.").

[67] *Bradley v. Chiron Corp.*, 136 F.3d 1317, 1325-26 (Fed. Cir. 1998).

> Dr. Bradley stresses the liberal pleading policy of the Federal Rules, citing *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957). He argues that since an amended complaint supersedes any prior pleadings, consistency is irrelevant, citing *King v. Atiyeh,* 814 F.2d 565 (9th Cir.1987) and *International Controls Corp. v. Vesco,* 556 F.2d 665 (2d Cir.1977); and that the court is obligated to accept the second amended complaint as filed and to construe the allegations in a manner most favorable to him. The district court observed that the second amended complaint was filed not as of right, but pursuant to leave to amend, and held that "the amended complaint may only allege 'other facts consistent with the challenged pleading.'" *Bradley v. Chiron Corp.*, Case No. 94-cv-04342 CW, 1996 WL 441022, at *3 (N.D. Cal. July 15, 1996) (quoting *Reddy v. Litton Industries, Inc.*, 912 F.2d 291, 296 (9th Cir.1990) (internal citations omitted)). We agree that the court was not required to accept as true the inconsistent allegations in the second amended complaint. Neither *Conley v. Gibson* nor the other cases cited by Dr. Bradley hold otherwise.

[68] Fevinger's counsel took the position at oral argument that it was only two or three months of missed payments.

[69] *See* Docket No. 63 at 13 ("Despite the fact that Plaintiff had fallen a few months behind [on her payments] prior to August 2010, Plaintiff was calling to reinstate her loan"). Fevinger's counsel also conceded at oral argument that "it is true that Rachel Fevinger was two or three months late when she called up Bank of America to attempt to reinstate."

10
Case No. 5:13-cv-04839-PSG
ORDER GRANTING IN-PART DEFENDANTS' MOTION TO DISMISS

adequate basis to sustain a breach of the implied covenant claim. Fevinger's "election to skip payments" ultimately was Fevinger's "alone to make."[70] The "core of [Fevinger's] pleadings on this cause of action remains the contention that [BANA] told her she could obtain a loan modification by going late on her payments. This does not rise above the level of encouragement. The choice to pay or not to pay remained with [Fevinger]. Plaintiff therefore fails to state a claim for breach of the implied covenant."[71]

Because Fevinger did not satisfy her obligations under the contract by at least paying all sums due under the mortgage agreement, Fevinger did not do "all or substantially all of the things that the contract required" her to do or establish that she was excused from fulfilling her obligations. Dismissal of Fevinger's breach of the implied covenant of good faith and fair dealing claim therefore is warranted. Because the court has already provided Fevinger with leave to amend the identified flaw with this claim[72] and the flaw remains in her third amended complaint, the court is persuaded the additional amendment would be futile. Dismissal with prejudice is warranted.[73]

---

[70] *Ha v. Bank of Am., N.A.*, Case No. 5:14-cv-00120-PSG, 2014 WL 3616133, at *9 (N.D. Cal. July 22, 2014).

[71] *Ren v. Wells Fargo Bank, N.A.*, Case No. 3:13-cv-0272 SC, 2013 WL 5340388, at *2 (N.D. Cal. Sept. 24, 2013) ("The Court dismissed this claim in Plaintiff's FAC because Defendant never actively interfered with Plaintiff's payments. It told Plaintiff that she could enter the loan modification process by going late on her payments, but that was a choice only Plaintiff could make."); *see also Franczak v. Suntrust Mortgage, Inc.*, Case No. 5:12-cv-01453-EJD, 2013 WL 843912, at *3 (N.D. Cal. Mar. 6, 2013) ("Being left with an impression that a particular action is encouraged is something very different than actually being required to do something.") (quotations omitted).

[72] *See* Docket No. 38 at 12.

> In this case Fevinger has not adequately pleaded that she fulfilled her obligations under the contract or that Defendants breached the contract. Fevinger fell behind on her payments and never cured the default. Fevinger's complaint concedes that she was provided with a reinstatement figure to settle her arrears. She never did. Her claim for breach of the covenant of good faith and fair dealing thus cannot survive. Because the court is not persuaded that amendment as to this claim is futile, the claim is dismissed with leave to amend. (citations omitted).

[73] *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

11
Case No. 5:13-cv-04839-PSG
ORDER GRANTING IN-PART DEFENDANTS' MOTION TO DISMISS

### C. Intentional Interference with Contractual Relations

Fevinger alleges that BANA as the former servicer of the loan was interfering with the deed of trust between US Bank and Fevinger. In particular, Fevinger relies on law that says that a servicer is not in a contractual relationship with a borrower. The servicer therefore may be liable for interfering with the contract between the holder of the note (US Bank) and the borrower (Fevinger).

"It has long been held that a stranger to a contract may be liable in tort for intentionally interfering with the performance of the contract. The elements which a plaintiff must plead to state a cause of action for intentional interference with contractual relations are:

(1) a valid contract between plaintiff and a third party;

(2) defendant's knowledge of this contract;

(3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship;

(4) actual breach or disruption of the contractual relationship; and

(5) resulting damage."[74]

BANA urges that the complaint does not adequately allege (1) a valid contract between Fevinger and a third party, (2) actionable conduct or (3) any resulting damage.[75] BANA's first argument is not persuasive because the complaint alleges that BANA's conduct interferes with the contract that Fevinger has with her lender, US Bank.[76] BANA's second argument conflates distinct causes of action: interference with prospective economic advantage and interference with

---

[74] *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990) (internal citations omitted) (punctuation modified); *see also Silicon Knights, Inc. v. Crystal Dynamics, Inc.*, 983 F. Supp. 1303, 1309 (N.D. Cal. 1997).

[75] *See* Docket No. 66 at 10-12.

[76] *See* Docket No. 63 at ¶ 49.

> If Defendant Bank of America's conduct is not deemed to be a breach of the covenant of good faith and fair dealing in any contract between Bank of America and Plaintiff, then, alternatively, Plaintiff alleges that this same conduct constitutes an intentional interference with the contract that Plaintiff does have with her lender.

12
Case No. 5:13-cv-04839-PSG
ORDER GRANTING IN-PART DEFENDANTS' MOTION TO DISMISS

an existing contract. Interference with an existing contract does not require wrongful conduct aside from the alleged interference in and of itself.[77] BANA's third argument falls short because the operative complaint offers up a panoply of damage theories.[78]

Dismissal of Fevinger's contract interference claim thus is not warranted.

**D.     Fraud**

Next, Defendants challenge Fevinger's fraud-based claim. "Under California law, the indispensable elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages."[79] Defendants characterize Fevinger's fraud claim as predicated on five alleged misrepresentations:

(1) the property would not be "lost" via foreclosure while her loan modification application was being reviewed;[80]

(2) the expression of Defendants' policy not to foreclose on borrowers who had loan modification applications pending;[81]

(3) Fevinger would receive a response regarding her loan modification application within twenty days;[82]

(4) Fevinger's loan modification was under review;[83] and

---

[77] *See Quelimane Co. v. Stewart Title Guaranty Co.*, 19 Cal. 4th 26, 55 (1998).

   Because interference with an existing contract receives greater solicitude than does interference with prospective economic advantage, it is not necessary that the defendant's conduct be wrongful apart from the interference with the contract itself.

[78] *See* Docket No. 63 at ¶ 57.

   As a result of Defendant's conduct, Plaintiff has suffered damages, including, but not limited to late fees and foreclosure related fees, inflated reinstatement amounts, overcharges of fees, incurred attorneys' fees, costs of saving the Property, destruction of credit, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression, according to proof at trial and within the Court's jurisdiction.

[79] *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003) (quotations and citations omitted).

[80] *See id.* at ¶ 66.

[81] *See id.* at ¶¶ 64-66.

[82] *See id.* at ¶ 77.

[83] *See id.* at ¶¶ 79-81.

13
Case No. 5:13-cv-04839-PSG
ORDER GRANTING IN-PART DEFENDANTS' MOTION TO DISMISS

1     (5) Fevinger needed to submit additional documents to complete her loan modification application.[84]

Reduced down, Fevinger's core alleged misrepresentation is that she was getting jerked around by Defendants: they repeatedly encouraged her to pursue a loan modification and, in response, the banks said they would not pursue foreclosure proceedings until the application was sorted out.

The court previously dismissed Fevinger's fraud claim because "the [first amended] complaint [did] not clearly allege that Fevinger was told that no foreclosure activity would occur while any loan modification application was pending."[85] Despite Defendants' argument to the contrary, the operative complaint now states an actionable fraud claim.[86] The complaint clarifies that the alleged misrepresentation was that Defendants would not initiate foreclosure proceedings, not that Defendants would not sell Fevinger's home.[87] This is enough to be actionable.

Defendants also argue that Fevinger's reliance was not reasonable. A plaintiff adequately pleads justifiable reliance by alleging facts demonstrating (1) actual and (2) reasonable reliance.[88] In the context of fraud claims by a borrower against a lender, California courts have found reasonable reliance where the creditor allegedly misrepresented that it had not scheduled a trustee's

---

[84] *See id.* at ¶¶ 82-87.

[85] *See* Docket No. 38 at 14.

[86] *See* Docket No. 63 at ¶¶ 64-67 (alleging that Defendants misrepresented that they would not foreclose on borrowers with pending loan applications).

[87] *See id.*; *see also* Cal. Civ. Code § 2924(a)(1) (indicating that notice of default issuance initiates foreclosure).

[88] *See OCM Principal Opportunities Fund v. CIBC World Markets Corp.*, 157 Cal. App. 4th 835, 864 (2007). Whereas actual reliance requires "a complete causal relationship between the alleged misrepresentations and the harm to have resulted therefrom," reasonable reliance requires that "circumstances were such to make it reasonable for the plaintiff to accept the defendant's statements without an independent inquiry or investigation." *Id.* (Internal citations, quotations and modifications omitted).

14
Case No. 5:13-cv-04839-PSG
ORDER GRANTING IN-PART DEFENDANTS' MOTION TO DISMISS

sale of the borrower's home while the borrower was requesting a reevaluation of the creditor's denial of a loan modification.[89]

Here, Fevinger adequately pleads justifiable reliance.  As to actual reliance, Fevinger alleges that, but for the misrepresentations, she would have avoided accruing the additional debt that ultimately led to the notice of default by reinstating her loan initially or pursuing other foreclosure alternatives.[90]  Fevinger further alleges her reliance was reasonable because BANA "was the holder of Plaintiff's loan, and ostensibly possessed the requisite authority to forego foreclosure activities while modifying the loan."[91]  Given the relationship between the parties, Fevinger's reliance is adequately plead.[92]

---

[89] *See West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App. 4th 780, 795-96 (2013).

The Trial Plan Agreement represented only that Chase Bank would reevaluate West's application for a permanent loan modification if West made all payments as scheduled.  But the April 5, 2010 letter stated that Chase Bank would provide West with the NPV input values if she requested them within 30 days and that Chase Bank would conduct a new evaluation if West provided evidence that any of those input values were inaccurate.  West could justifiably rely on those representations, and she alleged she asked for those input values on April 8 and on May 24, 2010.  Chase Bank never sent them to her before foreclosing.

West also alleged that from the time of the Trial Plan Agreement, Chase Bank concealed the fact it was pursuing foreclosure and that on May 24, a Chase Bank representative told West that no trustee's sale was scheduled.  West could have justifiably relied on that representation too, particularly considering she was requesting a reevaluation of Chase Bank's decision to deny her a permanent loan modification.

*See also Ragland v. U.S. Bank Nat. Assn.*, Case No. G045580, 2012 WL 3933748, at *9 (Cal. App. 4th, Sept. 11, 2012) (finding triable issue of fact as to reasonability of borrower's reliance precluding summary judgment for lender on borrower's fraud and negligent misrepresentation claims where borrower alleged reliance on lender's misrepresentations that she should not make mortgage payments in certain months).

[90] *See* Docket No. 63 at ¶¶ 72-75, 77 and 93.

[91] *Id.* at ¶ 71 and 95.

[92] Any claim that Fevinger should have independently investigated whether Defendants were going to foreclose while her application was pending is not persuasive.  *See OCM Principal Opportunities Fund*, 157 Cal. App. 4th at 864-67.  Fevinger nevertheless pleads a trail of diligent telephonic communications seeking information on this point.  *See* Docket No. 63 at 13, 15-16, 19-29 and 31-39.

15
Case No. 5:13-cv-04839-PSG
ORDER GRANTING IN-PART DEFENDANTS' MOTION TO DISMISS

Fevinger's fraud claim also adequately alleges damages. Fevinger seeks recovery for damages stemming from Defendants' alleged misrepresentation including "the imminent loss of her Property, loss of money including but not limited to losses through overcharges, incurred attorneys' fees and costs to save her home, a loss of reputation and goodwill, destruction of credit, severe emotional distress, loss of appetite, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression."[93] Additionally, Fevinger contends that Defendants made these misrepresentations intentionally – a necessary allegation to claim punitive damages.[94] While the court agrees with Defendants that the lapsed mortgage payments are not recoverable,[95] the collateral losses Fevinger allegedly has suffered could be if Fevinger proves up her fraud theory.[96]

Although the court cannot say whether Fevinger will ultimately prevail on her fraud claim, dismissal at the pleading stage is not warranted.

### E.     Unfair Competition

California's UCL provides a private cause of action for users who are harmed by unfair, unlawful or fraudulent business practices.[97] Fevinger pleads her claim under the unlawful prong.[98]

---

[93] Docket No. 63 at ¶ 75.

[94] *See id.* at ¶ 96.

[95] *See Auerbach v. Great Western Bank*, 74 Cal. App. 4th 1172, 1185 (1999) (plaintiffs' payments did not constitute damages because plaintiffs were obligated to make them pursuant to a valid promissory note).

[96] Defendants' suggestion that there is not an adequate nexus between the damages alleged and the misrepresentation is not persuasive. Fevinger alleges that but for the misrepresentations she would have pursued other foreclosure alternatives to mitigate her losses. *See* Docket No. 63 at ¶ 93.

> At the time that Defendant made these representations, Plaintiff was unaware of the falsity of the representations and in fact believed she was being actively reviewed a loan modification, as represented by Bank of America's representatives. Therefore, in reliance on Defendant's statements, Plaintiff continued submitting the materials requested and refrained from pursuing other foreclosure alternatives.

[97] *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).

[98] *See* Docket No. 63 at ¶¶ 98-101.

To sustain a claim under the unlawful prong, Fevinger must allege facts that, if proven, would demonstrate that Defendants conduct violated another, underlying law.[99] If the unlawful conduct is part of a uniform course of fraudulent conduct, it must meet Fed R. Civ. Pro. 9(b)'s heightened pleading standards, but if it does not, then the ordinary pleading standards will suffice.[100]

Because Fevinger adequately pleads that BANA's fraudulent conduct triggered larger arrears accruing on her home that she could no longer cover along with other related economic harms, dismissal of her UCL claim is not warranted.[101]

**IT IS SO ORDERED.**

Dated: August 4, 2014

*[signature]*
PAUL S. GREWAL
United States Magistrate Judge

---

[99] See *Trazo v. Nestle USA, Inc.*, Case No. 5:12-CV-2272-PSG, 2013 WL 4083218, at *9 (N.D. Cal. Aug. 9, 2013).

[100] See *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

[101] See Docket No. 63 at ¶ 102 ("As a result of Defendants' wrongful conduct, Plaintiff has suffered various damages and injuries, including, but not limited to, the imminent loss of her Property and loss of money including but not limited to overcharges and incurred attorneys' fees and costs to save her home.").

17
Case No. 5:13-cv-04839-PSG
ORDER GRANTING IN-PART DEFENDANTS' MOTION TO DISMISS